UNITED STATES OF AMERICA,

v.                                    Criminal No. 2:16cr130

ANTONIO SIMMONS,

NATHANIEL TYREE MITCHELL,
and

MALEK LASSITER,

            Defendants.

## MEMORANDUM ORDER

This matter comes before the Court on various pre-trial motions filed by Defendants Simmons, Mitchell, and Lassiter. Much of the relief requested in the pending motions was originally sought in a motion filed by an individual Defendant, but subsequent to the filing of such a motion, one or more of the remaining Defendants filed a "motion to adopt." The numerous requests to "adopt" motions filed by other Defendants named in the case are all **GRANTED** <u>as to adoption</u>. The relief requested in each motion filed by a lone Defendant, as well as the relief requested by Defendants subsequently deemed to have adopted/joined in a previously filed motion, is addressed below.

### A. Motion to Dismiss Count 38

Defendant Simmons has moved to dismiss Count 38 of the second superseding indictment, a count that alleges witness

tampering in violation of 18 U.S.C. § 1512(b).  ECF No. 194.

Simmons asserts that the phrasing of the charged threat to the

alleged witness is not specific to an individual, is "too

remote" to sustain prosecution, and that such count is

"implausible on its face" because the Government would never

house an adverse witness in the same jail where a defendant is

housed.  ECF No. 195, at 2-3.  The Government responds in

opposition, arguing that Simmons' motion improperly attacks the

merits of the factual allegations in the indictment based on

speculative presumptions.  ECF No. 207, at 2-3.

For the reasons stated in greater detail in the

Government's brief, ECF No. 207, Simmons' motion is **DENIED**

because Count 38 tracks the statutory language of the charged

offense, provides the location of the threat, the approximate

date of the threat, and the nature and substance of the threat,

thereby putting Simmons on notice of sufficient details of the

charged crime.[1]  See United States v. Thomas, 367 F.3d 194, 197

(4th Cir. 2004) ("To warrant dismissal of the indictment, [the

defendant] would need to demonstrate that the allegations

therein, even if true, would not state an offense."); United

States v. Matzkin, 14 F.3d 1014, 1019 (4th Cir. 1994) ("An

---

[1] Even if it was proper for this Court to evaluate the plausibility of the
charge by considering the likelihood that a witness against Simmons would
be housed in the same jail, Simmons' arguments overlook the fact that it
is not uncommon for an incarcerated individual awaiting trial to engage in
inculpatory conduct that is witnessed by other inmates.

indictment that tracks the statutory language is ordinarily valid" because "[o]ne of the principal purposes of an indictment is to apprise the accused of the charge or charges leveled against him so he can prepare his defense.") (citations omitted). To the extent the evidence presented at trial by the Government in its case-in-chief demonstrates the evidentiary deficiencies Simmons alleges in his motion to dismiss, the Court will consider a future motion at the appropriate time.

### B. Motions to Dismiss Non-Economic Crimes

All three defendants have moved to dismiss Counts 3-9, 22-30, and to strike numerous "Overt Acts" from the charged RICO conspiracy (Count 1), based on their assertion that this Court lacks subject matter jurisdiction over these "non-economic" violent crimes that do not affect interstate commerce. ECF Nos. 153, 158, and 202. Defendants' motions, however, properly acknowledge that Fourth Circuit precedent is contrary to their position. United States v. Cornell, 780 F.3d 616, 621-22 (4th Cir.), cert. denied, 136 S. Ct. 127 (2015). Defendants' filings therefore indicate that their motions are advanced to "preserve the issue" going forward due to a conflict among federal circuit courts. ECF No. 153, at 3. In light of Cornell, Defendants' motions to dismiss are **DENIED**.[2]

---

[2] As noted by the Government, ECF No. 191, the RICO Enterprise at issue in this case allegedly engaged in other racketeering acts that affect interstate commerce, including a Hobbs Act robbery, narcotics trafficking,

## C. Motions to Exclude Custodial Statements

Defendants Simmons and Mitchell have each moved to exclude the custodial statement of the other, arguing that admission of such evidence would violate Bruton v. United States, 391 U.S. 123 (1968). ECF Nos. 143, 155. Additionally, Defendant Lassiter has argued in support of a motion to sever that the admission of Simmons' statement violates Bruton. ECF No. 222. The Government concedes that portions of the disputed custodial statements likely violate Bruton, (at least with respect to Simmons' statements implicating Mitchell, and Mitchell's statements implicating Simmons) but argues that neither exclusion of the statements nor severance is warranted, instead asserting that to the extent such statements facially incriminate a co-Defendant, they can be, and will be, redacted by the Government and will be presented to the Court at a later time for a ruling on their compliance with Bruton. ECF No. 183, at 6-8. Accordingly, the two pending motions raising this issue, and the portion of Lassiter's severance motion raising a Bruton argument, are **TAKEN UNDER ADVISEMENT** until a time when the Court can evaluate the proposed redactions.[3] ECF Nos. 143, 155, 221.

---

and crimes involving firearms that traveled in interstate commerce. See Cornell, 780 F.3d at 622-23.

[3] Counsel for the Government are **INSTRUCTED** to confer with defense counsel to determine an appropriate timeline for providing the proposed redactions

## D. Motions to Dismiss Counts 20 & 21

All three Defendants have either moved to dismiss Counts 20 and 21, or moved to exclude evidence of the crimes charged in Counts 20 and 21. ECF No. 135, 161, 172, 201.[4] Defendants argue that the charged murder in aid of racketeering and associated use of a firearm were not committed in furtherance of any gang/Enterprise activity, and that the evidence produced by the Government in discovery not only fails to prove a conspiracy, but suggests that even if the Government can prove that defendant Mitchell killed the victim identified in these counts, it was a rogue act committed by a lone individual. ECF No. 136, at 2-3. The Government responds in opposition, asserting that a motion to dismiss may not be based on a defendant's interpretation of discovery materials. ECF No. 191, at 10; see United States v. Engle, 676 F.3d 405, 415 (4th Cir. 2012) (rejecting the defendant's pretrial dismissal motion because it was clearly based "on the pretrial 'evidence' that had thus far been produced," explaining that Rule 12 dismissal is generally

---

if they have not yet been produced. After production, if there are disagreements remaining, counsel should confer to determine if such disagreements can be narrowed, and after such consultation, counsel shall file a status update with the Court, which may include a proposal for supplemental briefing and/or a request for a hearing on this issue.

[4] Mitchell is the only defendant charged in Counts 20 and 21 and he has moved to dismiss such counts. ECF No. 135. Defendant Simmons subsequently filed a motion in limine seeking to exclude evidence of the crimes charged in Counts 20 and 21. ECF No. 161. Defendant Lassiter subsequently filed one motion seeking to adopt the motion to dismiss and another seeking to adopt the motion in limine. ECF Nos. 172, 201.

limited to attacking "the allegations contained in the indictment" and should not be based on "a determination of facts that should have been developed at trial") (citations and quotation marks omitted). The Government further asserts that it is not required to prove a conspiracy in order to secure convictions on these counts, nor is it required to prove that the shooting charged in these counts furthered the goals of the Enterprise; rather, the Government must ultimately prove, and at this time need only charge, that the murder was committed by Mitchell "for the purpose of gaining entrance to" and/or "maintaining and increasing position in" the gang/Enterprise. ECF No. 191, at 10-11; see United States v. Fiel, 35 F.3d 997, 1005 (4th Cir. 1994) (rejecting the defendants' assertion that "the violent crimes charged must be committed for the purpose of aiding or furthering the racketeering activity," instead finding that the required link between the violent crime and the RICO enterprise is that the "proscribed act of violence" was committed "in order to maintain or increase [a defendant's] position in the enterprise"); United States v. Barnett, 660 F. App'x 235, 242 (4th Cir. 2016) ("The purpose requirement is 'satisfied if the jury could properly infer that the defendant committed his . . . crime because he knew it was expected of him by reason of his membership in the enterprise or that he committed it in furtherance of that membership.'" (quoting Fiel,

35 F.3d 1004)); see also United States v. Tipton, 90 F.3d 861, 890-91 (4th Cir. 1996) (rejecting the defendant's assertion that the violent acts were based on a personal grievance rather than an "enterprise-related 'purpose,'" the latter of which included retaliatory action "critical to the maintenance of one's position in the enterprise").

Having reviewed the relevant case law, for the reasons set forth herein and in the Government's brief in opposition, the Court **DENIES** the pretrial motions to dismiss Counts 20 and 21 as well as the motion to exclude evidence in support of such counts. Any motions predicated on failure of proof at trial will be considered at the appropriate time.

## E. Motions to Sever

Defendants Simmons and Lassiter have moved to sever for trial Counts 2, 20, 21, and 31-38 of the second superseding indictment pursuant to Rules 8 and 14 of the Federal Rules of Criminal Procedure. ECF Nos. 147, 200. Additionally, Defendant Lassiter has moved to sever his trial from the trial of his co-Defendants. ECF No. 221. The Government opposes severance of counts and further opposes severance of co-Defendant Lassiter from the joint trial. ECF Nos. 191, 230.

### 1. Joinder and Severance Standards

#### a. Rule 8(a) - Joining Counts

Federal Rule of Criminal Procedure 8(a) provides that an "indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Such rule permits "very broad joinder because of the efficiency in trying the defendant on related counts in the same trial." United States v. Cardwell, 433 F.3d 378, 385 (4th Cir. 2005) (citations and quotation marks omitted). "Moreover, joinder is the rule rather than the exception, because the prospect of duplicating witness testimony, impaneling additional jurors, and wasting limited judicial resources suggests that related offenses should be tried in a single proceeding." United States v. Mir, 525 F.3d 351, 357 (4th Cir. 2008) (citations and quotation marks omitted).

When offenses are purported to be "connected with or constitute parts of a common scheme or plan," the Fourth Circuit has interpreted Rule 8(a) "flexibly, requiring that the joined offenses have a 'logical relationship' to one another." Cardwell, 433 F.3d at 385 (quoting United States v. Hirschfeld, 964 F.2d 318, 323 (4th Cir. 1992)). A "mere temporal

relationship" is insufficient to show that two crimes are "logically related," but evidence of a temporal relationship, combined with additional evidence, may provide the required link between the two crimes. Id. at 386-87; see also United States v. Williams, No. 4:09cr81, 2010 WL 4702351, at *2 (E.D. Va. Oct. 28, 2010) ("[I]llegal activities performed by members of street gangs in furtherance of such gang have a 'logical relationship' to each other . . . .").

## b. Rule 8(b) - Joining Defendants

Individual defendants are properly joined for trial when they are alleged to have participated in the "same series of acts or transactions constituting an offense or offenses," Fed. R. Crim. P. 8(b), and "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537 (1993) (citations omitted). Moreover, joinder of defendants "is highly favored in conspiracy cases, over and above the general disposition supporting joinder for reasons of efficiency and judicial economy." United States v. Dinkins, 691 F.3d 358, 368 (4th Cir. 2012) (citation omitted). The Fourth Circuit therefore generally "adhere[s] to the rule that defendants charged with participation in the same conspiracy are to be tried jointly." United States v. Akinkoye, 185 F.3d 192, 197 (4th Cir. 1999).

### c. Rule 14(a) - Severance

Even if joinder of counts is proper under Rule 8(a), and/or joinder of defendants is proper under Rule 8(b), Rule 14(a) provides a potential basis for severance. A district court may sever counts of an indictment, sever the trials of different defendants, or provide other proper relief, if joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). The moving party has the burden to establish that Rule 14 severance is appropriate, and "[i]t is not enough for [a] defendant [seeking severance] to show that severance offers him 'a better chance of acquittal'" on one or more charges. Cardwell, 433 F.3d at 387 (quoting United States v. Reavis, 48 F.3d 763, 767 (4th Cir. 1995)). Instead, when Rule 8 joinder is proper, Rule 14 severance should be granted "'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" United States v. Qazah, 810 F.3d 879, 891 (4th Cir. 2015) (emphasis added) (quoting Zafiro, 506 U.S. at 539). "A defendant seeking severance pursuant to Rule 14 'has the burden of demonstrating a strong showing of prejudice.'" Mir, 525 F.3d at 357 (emphasis added) (quoting United States v. Goldman, 750 F.2d 1221, 1225 (4th Cir. 1984)).

**2. Analysis – Joinder/Severance of Counts (Simmons & Lassiter)**

### a. Joinder of Counts

Having reviewed the parties' filings, as well as the case law cited therein, the Court agrees with the Government that Counts 2, 20, 21, and 31-38 are properly joined with the remaining offenses charged in this case. The second superseding indictment sufficiently alleges that the disputed murder and associated firearm count (Counts 20 & 21), and drug crimes and related firearms possession counts (Counts 2, 31-37), constitute parts of the common scheme or plan charged in Count 1 as each of the disputed charges are both temporally related and logically related to the RICO conspiracy.[5] Specifically, the RICO conspiracy charged in Count 1 alleges that the criminal organization, which included both "members and associates," engaged in numerous acts of violence, robbery, murder, "as well as acts of narcotics distribution." ECF No. 121 ¶ 1 (emphasis added). The expressly charged "Purposes and Objectives" of the criminal "Enterprise" defined in Count 1 includes enriching and protecting the power of the Enterprise through not only violent

---

[5] While Lassiter highlights the fact that the narcotics conspiracy charged in Count 2 is alleged to extend many years into the past, the Court notes that the RICO conspiracy charged in Count 1 is also alleged to have existed for many years. More importantly, a review of the substantive crimes charged in Counts 3-33, and 35-37, of the second superseding indictment reveals that the drug trafficking conduct at issue, as well as the murders, attempted murders and gun charges, are predicated on events occurring in a very condensed time window (November 2015 through April of 2016), and the Court therefore views the temporal relationship of the various counts to be quite strong.

acts and robberies, but also through "narcotics distribution." Id. ¶ 5.a. The same paragraph further alleges that the purposes and objectives included "[f]inancially supporting members of the Enterprise through narcotics trafficking and robberies." Id. ¶ 5.e. The "Means and Methods" of the Enterprise alleges the use of violence to promote the prestige of the Enterprise and to enhance the rank/reputation of individual members, id. ¶ 6.b, as well as trafficking in narcotics, id. ¶ 6.c, and the charged "Racketeering Violation," expressly includes acts involving murder, the conspiracy to traffic controlled substances, and actual trafficking in controlled substances, id. ¶¶ 7.a, 7.d. Moreover, the "Overt Acts" outlined in Count 1 include the murder and firearm offenses charged in Counts 20 and 21 and the conduct constituting the drug trafficking conspiracy and the drug trafficking substantive counts at issue. Id. ¶¶ 9m, 9n, and 9x through 9bb. Finally, the second superseding indictment alleges that after Simmons' arrest, he spoke with "various co-conspirators over the jail phone" and gave them instructions regarding gang meetings, the distribution of controlled substances, a threatened assault of a gang member for failure to pay money owed to Simmons, distribution of guns to gang members, as well as other "gang" matters. Id. ¶ 9cc.

Consistent with the Fourth Circuit's analysis in United States v. Mouzone, 687 F.3d 207 (4th Cir. 2012), "the

government's assertion that distribution of [narcotics, and other charged substantive crimes, were each] a predicate offense of the RICO conspiracy made [their] joinder to the RICO count appropriate." Id. at 219 (citations omitted).[6] The firearms possessed in conjunction with, and in furtherance of, the charged narcotics trafficking offenses are similarly both logically related and temporally related to the drug crimes themselves and the RICO conspiracy as a whole.[7]

For similar reasons, the Court finds that the witness tampering charge (Count 38), which expressly alleges that the testimony sought to be tampered with was testimony to be given in this case, is properly joined as part of the same series of acts or transactions as the remaining charges in this case. United States v. Carmichael, 685 F.2d 903, 910 (4th Cir. 1982).

---

[6] The Court agrees with the Government that Defendants advance a "hyper-technical" contention that the drug trafficking counts should be determined to be unrelated to the RICO conspiracy charged in Count 1 because the drug counts make no reference back to the RICO conspiracy. As outlined above, the RICO conspiracy count expressly alleges that the same drug activities charged in subsequent counts were a "Purpose/Objective" of the Enterprise, a "Means and Method" of the Enterprise, constituted racketeering violations, and were "Overt Acts" of the RICO conspiracy.

[7] Unlike the situation in United States v. Hawkins, 776 F.3d 200, 207 (4th Cir. 2015), where a "felon in possession count" was deemed to be improperly joined with an armed carjacking count because the offenses involved two different guns possessed during unrelated incidents occurring more than two weeks apart, here, the Government alleges that on March 22, 2016: Defendant Simmons possessed cocaine base with the intent to distribute it (Count 35), that he possessed a firearm in furtherance of such drug trafficking (Count 36), and that he possessed a firearm subsequent to a felony conviction (Count 37). ECF No. 121; see United States v. Brown, No. 4:13cr110, 2014 WL 31454, at *2 (E.D. Va. Jan. 3, 2014) (distinguishing Hawkins because the firearm at issue in Brown was possessed in furtherance of the drug trafficking crimes "that were part of the indicted conspiracy").

Such witness tampering count is also alleged as an "Over Act" in the RICO conspiracy.[8]

## b. Severance of Counts

Having found joinder of counts proper, the Court separately considers, and rejects, Defendants' contentions that severance of the drug trafficking counts, or other disputed counts, should be granted under Rule 14. Notably, the Government correctly asserts that evidence of the armed drug trafficking crimes, the murder charged in Count 20, and the witness tampering charged in Count 38, would be admissible at the RICO trial even if severance was granted, thereby largely eliminating any assertions of prejudice. Moreover, at least some of the RICO evidence would be admissible at any severed drug trafficking trial or severed witness tampering trial to establish the nature of the Enterprise that the severed counts were allegedly conducted to further. United States v. Cole, 857 F.2d 971, 974 (4th Cir. 1988) ("[The] possibility of prejudice is greatly diminished where . . . the evidence of the joined crimes would be mutually admissible for legitimate purposes in separate trials for each offense.") (citation and quotation marks omitted); see also United States v. Masters, 622 F.2d 83, 86 (4th Cir. 1980) (explaining that the jury is "entitled to know

---

[8] The alleged pretrial threat to a potential witness in this case, if effective, could presumably inure to the benefit of multiple conspirators.

the 'setting' of a case," to include the facts necessary "to complete the story of the crime on trial by proving its immediate context or the 'res gestae'") (citations and quotation marks omitted). Moreover, even assuming that some of the RICO evidence, such as detailed evidence of individual murders, may be inadmissible at a severed trial, "prejudice does not result automatically from a situation where some evidence not admissible in separate trials is admitted in a joint trial," and Defendant Simmons has failed to identify any "particular danger that the jury would cumulate" the evidence in this case, or otherwise be unable to reach a fair verdict, due to the joinder of the narcotics trafficking and related firearms charges and/or the witness tampering charges. Carmichael, 685 F.2d at 910. Finally, even assuming that a joint trial would prejudice Defendant Simmons to a degree because fewer details regarding the Enterprise would be admissible at a drug trafficking or witness tampering trial: (1) Simmons fails to demonstrate that the prejudice rises to the level where a jury would be prevented from making a reliable judgment about guilt or innocence; and (2) any prejudice will be effectively mitigated, if not eliminated, through the use of limiting instructions at trial. See Mir, 525 F.3d at 357-58.[9]

---

[9] Consistent with the law and facts discussed above, in determining that limiting instructions are the best course to address any potential prejudice, the Court has carefully considered the additional burden on the

To the extent Simmons separately asserts prejudice from the joinder of the § 922(g) felon in possession count (Count 37), "[s]everance of a[n] 18 U.S.C. § 922(g) count from other substantive counts is not required because '[a]ny prejudicial effect of the necessary introduction of the defendant's past conviction can . . . be avoided through the use of a limiting instruction.'" United States v. Mason, 139 F. App'x 502, 505 (4th Cir. 2005) (last alteration in original) (quoting United States v. Silva, 745 F.2d 840, 844 (4th Cir. 1984)). Simmons' citation to case law addressing a district court's refusal to allow a defendant to stipulate to status as a felon appears to miss the mark, because although it is a matter for another day, this Court has consistently permitted defendants to stipulate to "felon status" for § 922(g) purposes. If Simmons' status as a felon is not otherwise admissible, and the Government refuses to stipulate to such status, the Court would be open to reconsidering Simmons' request for severance of Count 37.

For the above stated reasons, and for those stated in greater detail in the Government's opposition to severing counts, see ECF No. 191, at 14-20; ECF No. 230, 4-12, the portions of Defendants' motions challenging Rule 8(a) joinder are **DENIED**, as are the portions seeking Rule 14 severance of

Court, the witnesses, and the Government were the Court to conduct two separate trials on these related charges.

counts as Defendants fail to make a "strong showing" of prejudice in light of the nature of the allegations in the second superseding indictment.

### 3. Analysis – Joinder/Severance of Defendants (Lassiter)

#### a. Joinder of Defendants

As noted above, joinder of Defendants "is particularly favored" in a conspiracy case. United States v. Fuller, 498 F. App'x 330, 331 (4th Cir. 2012) (citation omitted). Lassiter, an alleged "associate" of the street gang at issue in this case, is charged in the RICO conspiracy count, and in several substantive counts, with joint participation in multiple attempted murders with co-Defendants Simmons, Mitchell, Anthony Foye, and Alvaughn Davis.[10] Lassiter, a jointly indicted co-conspirator, fails to establish that Rule 8(b) joinder is improper either because he is not a gang "member" or because his co-conspirators are charged with additional crimes. Notably, Rule 8(b) expressly states that joined defendants "may be charged in one or more counts together or separately" and that "[a]ll defendants need not be charged in each count." Fed. R. Crim. P. 8(b).

#### b. Severance of Defendants

As to Lassiter's request for Rule 14 severance from his co-Defendants, a criminal defendant "is not entitled to severance

---

[10] Foye and Davis have both entered guilty pleas in this case.

merely because . . . the evidence against one defendant is not as strong as that against the other." United States v. Shealey, 641 F.3d 627, 633 (4th Cir. 2011) (citation and quotation marks omitted). Rather, Lassiter must establish a "serious risk" that a joint trial will either compromise a specific trial right or prevent a jury from reaching a just and reliable verdict. Qazah, 810 F.3d at 891.[11] For the reasons set forth below, Lassiter's broad contention, that he will be prejudiced by a joint trial with gang members charged with murders committed without Lassiter's involvement, fails to demonstrate the degree of prejudice sufficient to warrant severance.[12] See Fuller, 498 F. App'x at 331-32 (affirming the district court's denial of a motion to sever, noting that the defendant's "concerns about the relative culpability of himself and about the nature and quantity of the evidence against each respective defendant simply does not rise to the level of a miscarriage of justice"). Notably, Lassiter has not demonstrated the denial of a "specific trial right" or that the jury will be unable to reach a reliable

---

[11] Such a serious risk may occur, for example, when "essential exculpatory evidence that would be available to a defendant tried alone" was unavailable at a joint trial. Zafiro, 506 U.S. at 539.

[12] Lassiter highlights the Government's concession at a pretrial hearing that Lassiter is not a true "member" of the street gang at issue, ECF No. 222-1, arguing that a joint trial with high-ranking gang members who are charged with multiple murders creates a serious likelihood that Lassiter will be found guilty "by association." However, Lassiter's gang "status" appears to cut both ways, as the fact that Lassiter was not a gang "member" appears to render it less likely that a jury would hold him accountable for other gang members' misconduct.

verdict after being instructed to consider each count separately, and to consider each charged Defendant separately.

In ruling on a pre-trial motion to sever, a district court has far less information than the parties regarding the precise interplay of the alleged criminal acts and/or the individual defendants. That said, the second superseding indictment in this case includes sufficient facts to reveal that the Government's theory of the case is that members and associates of the "Enterprise" charged in Count 1 participated in numerous shootings over a very short period of time, leaving five people dead and several others wounded, and that all of these shootings were "in aid of racketeering activity" and committed to gain entrance into, or maintain or increase one or more Defendants' positions in the Enterprise. Stated simply, all of the close-in-time shootings are alleged to be related, both through the persons committing them and the motive for such crimes. While Lassiter's motion to sever asserts that evidence of the earlier-in-time murders, shootings that he did not participate in, would be "highly prejudicial" and include "gory" evidence, Lassiter's motion fails to identify a legal basis to exclude evidence of these murders were his case severed for trial.[13]

---

[13] The failure to advance such argument is not surprising in light of the timing of the shootings, the apparent related motives, as well as Lassiter's charged participation in the RICO conspiracy, including his charged involvement in multiple attempted murders and in actively shooting

19

Notwithstanding such failure, the Court recognizes the likelihood that Lassiter's motion inferentially refers to exclusion of "prejudicial" evidence under Rule 403 and further acknowledges the possibility that at least some of the evidence presented at a joint trial may not be admissible in a severed trial charging only Lassiter, due to Rule 403 concerns. However, on the instant record, the presumed inclusion of "some evidence" at a joint trial that would not be introduced at a severed trial is insufficient to demonstrate that Lassiter would not receive a fair trial if tried jointly with his co-conspirators. See Cole, 857 F.2d at 974 ("Although not all of the evidence of each of the joined crimes would have been admissible in separate trials of the individual counts, the fact that much of it could have been properly introduced greatly mitigates any prejudice to the defendants that results from the joinder."). Moreover, although Lassiter was only an "associate" of the street gang at issue, rather than a "member," the fact that he is directly tied to multiple attempted killings, including a shooting where the victim was struck multiple times in the chest, and because he is alleged to have actively shot at members of the public who might have witnessed such shooting, his degree of culpability is not dissimilar to that of his co-

at eyewitnesses while fleeing the scene of an attempted murder where the victim was shot multiple times in the chest.

Defendants, as the fact that these shootings did not result in a death is merely fortuitous. See Dinkins, 691 F.3d at 368 (rejecting the defendants' assertion that they were "prejudiced by joint trials because they were forced to defend themselves against a body of evidence that included separate murders not attributable to all defendants," noting that because each defendant was charged with murder, the defendants did not have "'markedly different degrees of culpability'" (quoting Zafiro, 506 U.S. 539)).

Stated differently, while some facts favor Lassiter's request for severance (the number of charges in this case where Lassiter is not named, the fact that some of the evidence introduced at a joint trial would not likely be admissible at a severed trial, Lassiter being the least culpable of the Defendants proceeding to trial,[14] and the fact that the joint trial is expected to last nearly two months), such factors must be balanced against the fact that: (1) Lassiter is charged as being a willing participant in a violent RICO conspiracy and the motives for the most serious predicate acts (murders and attempted murders) are directly tied to the RICO Enterprise; (2) much of the evidence describing the scope and conduct of the

---

[14] While Lassiter appears to be the least culpable defendant, and his illegal conduct focuses almost entirely on a single day, he is still charged with 10 of the 38 counts in the second superseding indictment, to include multiple attempted murders.

Enterprise in the weeks leading up to Lassiter's direct involvement would be admissible to explain these motives at a severed trial, particularly in light of Lassiter's status as an "associate" who was allegedly interacting with gang members in an effort to gain entrance into the gang; (3) Lassiter is not a "minor" participant charged with one or two non-violent offenses tangentially related to the Enterprise, but instead, is charged with attempting to kill multiple persons, possessing a firearm in furtherance of such attempts, and discharging his firearm at eyewitnesses, see Zafiro, 506 U.S. 539;[15] (4) the most serious substantive crimes that could cause the potential for prejudice (murder and attempted murders) appear subject to compartmentalization without confusion as the offenses occurred over a short period of time, each involving a specific victim or victims, at a specific location, and each involving specifically identified assailants, see United States v. Straker, 800 F.3d

---

[15] In opposition to Lassiter's motion seeking severance, the Government cites to its earlier in time proffer at a detention hearing, the transcript of which was introduced by Lassiter in support of severance. ECF No. 222-1. During such proffer, the Government provided additional details regarding Lassiter's contact with other gang members in the weeks prior to his participation in attempted murders; specifically, his contact with his cousin/co-Defendant Foye shortly after Foye murdered Altariq Tynes. Id. at 8-9. According to the Government, after Foye shot Mr. Tynes, Foye drove Tynes' car to Lassiter's neighborhood and showed Lassiter Mr. Tynes' dead body in the trunk. Id. Lassiter's fingerprints were subsequently found on the rearview mirror of Mr. Tynes' car in a location consistent with a driver adjusting the mirror. Id. Additionally, Mr. Lassiter pawned some of the jewelry that Mr. Tynes was wearing at the time of his murder. Id. These facts further illustrate that evidence of murders that Lassiter did not commit would remain admissible at a severed trial.

22

570, 628 (D.C. Cir. 2015), cert. denied, 136 S. Ct. 1170 (2016) ("That some co-conspirators will be more central than others does not render joint trial inappropriate as long as the jury can reasonably compartmentalize the substantial and independent evidence against each defendant."); (5) only three defendants are proceeding to trial, a number that is both easily manageable in the courtroom and is small enough to ensure that the jury will not confuse the Defendants and/or their alleged roles in the Enterprise, cf. Zafiro, 506 U.S. 539 (suggesting that the risk of prejudice increases when "many defendants" are jointly tried); (6) the Court will use limiting instructions to address any potential prejudice from a joint trial; (7) the counts against Simmons alleging drug trafficking involve crimes far less egregious than the attempted murders with which Simmons, Lassiter and Mitchell are all charged; (8) there is an absence of allegations of antagonistic defenses, a Defendant's desire to testify as to certain charges but invoke his right to remain silent as to others, and/or a Defendant's need for his co-Defendant's exculpatory testimony; and (9) there would be a substantial burden of severance on the Court, the witnesses, and the Government, as duplicative evidence defining the scope of the RICO conspiracy with which all three Defendants are charged would appear necessary at each trial to establish the res gestae of the conspiracy and/or the motives for the interrelated

offenses, see Cole, 857 at 974 ("In ruling on a request to sever, a trial court must balance any possible prejudice to the accused against the interests of the efficient administration of justice.") (citation omitted).

In summary, while Lassiter may indeed be correct that a severed trial is to his strategic advantage, he has failed to make a "strong showing" that a joint trial will deprive him of a fair trial. Such conclusion is plainly supported by the law of this Circuit, as Lassiter's primary argument for severance is the asserted effect of "spillover" evidence more directly relevant to his co-Defendants cases, and Fourth Circuit precedent provides that "only in the most extreme cases" is severance warranted when the "ground asserted for severance . . . is the disparity in the evidence of the moving defendant's participation and that of others in the alleged conspiracy." United States v. Mitchell, 733 F.2d 327, 331 (4th Cir. 1984) (citation and quotation marks omitted). Lassiter's pre-trial motion fails to demonstrate that "extreme circumstances" will prevent the jury from reaching a just verdict, particularly in light of the fact that the nature of the charges should allow Lassiter's counsel to clearly delineate between the different shootings at issue in this case. See United States v. Brooks, 957 F.2d 1138, 1145 (4th Cir. 1992) (explaining that if severance were granted whenever "the evidence against one

defendant is stronger than the evidence against other defendants[,] . . . motions to sever, which are rarely granted in conspiracy cases, would have to be granted almost as a matter of course") (citations omitted). To the contrary, the Court has no reason to doubt the jury's ability to follow the Court's instructions to separately evaluate the evidence against each Defendant, as "nothing in the record suggests that the [trial] evidence [will be] so confusing that the jury [will be] unable to compartmentalize the evidence against [Lassiter]" from the evidence against his co-conspirators. United States v. Duffy, 30 F. App'x 240, 244 (4th Cir. 2002); see Zafiro, 506 U.S. at 538-39 ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").

### c. Bruton Claim

In addition to the above, Lassiter asserts that a Bruton problem arises from the introduction of Simmons' recorded statement to authorities, and that the proper remedy is severance. Although it appears from the current record that Lassiter is not "facially implicated" by the portions of Simmons' testimony that he highlights, see ECF No. 230, at 6-7, the Government does note the possibility that it would be required to avoid eliciting testimony at trial about Simmons' photographic identification of Lassiter to avoid a Bruton

problem. Id. at 7. Because this Court has taken the Bruton issue under advisement until appropriate redactions are completed by the Government, the Court's ruling on Lassiter's severance motion is limited to all arguments other than the Bruton issue raised by Lassiter, thereby preserving Lassiter's right to challenge the redactions to be proposed by the Government and/or the introduction of Simmons' photographic identification of Lassiter.

For the above stated reasons, and for those stated in greater detail in the Government's brief in opposition, ECF No. 230, at 4-12, Lassiter's motion to sever his trial from the trial of his co-Defendants is **DENIED** as to all parts other than the request for severance to avoid violating Bruton.[16] ECF No. 221.

### F. Motions to Exclude Cell Cite Locations

All three Defendants have filed motions seeking to exclude cell-site location information ("CSLI") obtained by the Government without a warrant, ECF Nos. 141, 150, 169, and Defendant Lassiter filed two additional related motions, one to clarify the cell numbers being challenged by Mr. Lassiter, and the second requesting that the Court hold the decision on this issue in abeyance pending the decision by the United States

---

[16] While Lassiter's claim predicated on Bruton appears far less compelling than the claims advanced by his co-Defendants, the Court elects to reserve such issue until the Government's proposed redactions of Simmons' and Mitchell's statements have been presented to the Court.

Supreme Court in Carpenter v. United States, 137 S. Ct. 2211 (2015), ECF Nos. 223, 224. The Government opposes such motions, to include the motion asking this Court to hold the issue in abeyance, arguing that the CSLI was properly obtained without a warrant pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. § 2703(d), and alternatively arguing that even if an unconstitutional search was conducted in this case, the Government acted in reasonable reliance on: (1) the SCA, a facially valid statute in force at the time of the Government's action; and (2) the fact that every circuit to have ruled on the issue at the time the SCA Order was obtained upheld the validity of obtaining CSLI pursuant to the SCA. ECF No. 185.

As acknowledged by the parties in this case, controlling Fourth Circuit precedent precludes this Court from granting the Defendants' motions to exclude. See United States v. Graham, 824 F.3d 421, 424-25 (4th Cir. 2016) (en banc) ("Supreme Court precedent mandates th[e] conclusion" that "the Government's acquisition of historical CSLI from Defendants' cell phone provider did not violate the Fourth Amendment."). Accordingly, the motions seeking to exclude such evidence are **DENIED**.

This Court finds no reason to delay ruling on such issue pending the Supreme Court's ruling in Carpenter because, for the reasons stated in the Government's brief, even if the SCA is declared unconstitutional to the extent it allows the Government

to obtain court-ordered CSLI without a warrant, the disputed evidence would remain admissible in this case pursuant to the "good faith" exception to the exclusionary rule. United States v. Leon, 468 U.S. 897, 918-21 (1984); see Illinois v. Krull, 480 U.S. 340, 349-50 (1987) (extending the "good faith" exception discussed in Leon to "reasonable reliance on a statute," noting that "[u]nless a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law"). Notably, while Defendants correctly note that a divided panel of the Fourth Circuit previously held that a warrant is required to obtain CSLI, United States v. Graham, 796 F.3d 332, 338-39 (4th Cir. Aug. 5, 2015), such panel opinion was vacated less than three months after it was issued when a rehearing en banc was granted, United States v. Graham, 624 F. App'x 75 (4th Cir. Oct 28, 2015); see Graham, 824 F.3d at 424 (noting that when the Court granted the Government's motion for a rehearing en banc it "vacat[ed] the panel opinion" (citing Fourth Cir. Loc. R. 35(c)); Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll., 848 F.2d 457, 459 (4th Cir. 1988) ("Under Fourth Circuit rules, '[g]ranting of rehearing in banc vacates the previous panel judgment and opinion; the rehearing is a review of the judgment of the district court and not a review of the judgment of the panel.'" (alteration in original)

(quoting Fourth Cir. Loc. R. 35(c))).[17] After the panel opinion
was vacated, it was a legal nullity, and in light of the SCA
statute adopted by Congress and the President, Supreme Court
precedent on the third-party doctrine, and the largely
consistent handling of this issue by all other circuits, the
Government was objectively reasonable in relying on the
statute's validity when requesting CSLI in January of 2016
without first obtaining a warrant. See United States v.
Hernandez, 216 F.3d 1088 (10th Cir. 2000) (unpublished) (noting
that after the panel opinion at issue was "vacated by the court
sitting en banc" it was a "nullity with no precedential value");
cf. United States v. Wallace, 866 F.3d 605, 609 (5th Cir. 2017)
(holding that "[e]ven if accessing [the defendant's] cell
phone's E911 data did constitute a Fourth Amendment search," the
"good-faith exception to the exclusionary rule" applied as a
court order was secured under the SCA).

## G. Motions Seeking a Jury Questionnaire

All three Defendants have filed motions asking the Court to
use a jury questionnaire to aid in selecting a jury for the
trial of this case. ECF Nos. 159, 162, 171. The Government
opposes the use of a questionnaire, arguing that there is "no
need" for a questionnaire in this case, that the benefits of a

---

[17] It appears that while the text of Local Appellate Rule 35 was slightly
modified subsequent to Alvarado, the quoted principle remains in force.

questionnaire "if any—are negligible," and that there are potential negative consequences of using a questionnaire. ECF No. 196.

It appears undisputed that the Court has "broad discretion" on how to conduct the voir dire in this case, to include the determination of whether to use a jury questionnaire. <u>Kasi v. Angelone</u>, 300 F.3d 487, 509 (4th Cir. 2002) (citation and quotation marks omitted); <u>see</u> ECF No. 203 (conceding that the Court need not use a questionnaire); <u>United States v. Phibbs</u>, 999 F.2d 1053, 1071-72 (6th Cir. 1993) (concluding that "the district court did not abuse its discretion" by electing not to utilize a "written questionnaire created by defendants," noting that while the questionnaire "might have aided defendants in identifying sympathetic jurors, it was not needed to compose a fair-minded jury"); Robert E. Larsen, <u>Navigating the Federal Trial</u> § 5:40 (2017 ed.) ("The decision to use a written jury questionnaire rests in the sound discretion of the trial judge."). Having carefully considered the Defendants' request for a questionnaire, and the Government's opposition thereto, as well as the nature of the charges, the number of Defendants, the expected length of the trial, the fact that the death penalty is not being pursued, as well as other relevant factors, the Court, in its discretion, **DENIES** the motions requesting the use of a questionnaire in this case, finding that the best method for

impaneling an impartial jury is through live questioning by the Court. As is this Court's practice, counsel for all parties will have the opportunity to propose questions to be asked to the entire panel of prospective jurors, and will be permitted to submit follow-up questions for prospective jurors if individual voir dire is conducted by the Court. Fed R. Crim. P. 24(a).

## H. Summary

For the reasons stated above, all motions to adopt are **GRANTED as to adoption**; however, as to the ultimate merits of the pending motions, the following pretrial motions are **DENIED**: ECF Nos. 135, 141, 147, 150, 153, 158, 159, 161, 162, 169, 171, 172, 194, 200, 201, 202, 223, and 224. Defendant Lassiter's motion to sever is **DENIED** in all respects other than Lassiter's severance claim predicated on Bruton, which is **TAKEN UNDER ADVISEMENT**. ECF No. 221. Additionally, ECF Nos. 143 and 155 are **TAKEN UNDER ADVISEMENT**.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Order to counsel for Defendants and to the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/ Mark S. Davis

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December  14 , 2017

31