IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

UNITED STATES OF AMERICA

v.    CRIMINAL NO. 2:16cr130

ANTONIO SIMMONS, *et al.*

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION *IN LIMINE* TO EXCLUDE THE GOVERNMENT'S PROPOSED GANG EXPERT FROM OFFERING EXPERT OPINION TESTIMONY AND INTERPRETING THE MEANING OF SLANG WORDS USED IN RECORDED JAIL CALLS**

NOW COME the defendants Antonio Simmons, Nathaniel Mitchell, and Malek Lassiter (jointly the "Defendants"), by counsel, and submit this joint memorandum in support of the Defendants' motion in *limine* to exclude the Government's proposed gang expert, Detective Steven Parker, from offering expert opinion testimony and interpreting the meaning of slang/gang terms utilized by these defendants, associates, or other gang members during recorded jail calls. In support of their joint motion, the Defendants state as follows:

**PROCEDURAL HISTORY**

Defendant Malek Lassiter stands indicted in the Second Superseding Indictment for Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d); Attempted Murder in Aid of Racketeering Activity, in violation of 18 U.S.C. §§ 1959(a)(5) and 2; Assault with a Dangerous Weapon in Aid of Racketeering Activity, in violation of 18 U.S.C. §§ 1959(a)(3) and 2; Possession and Discharge of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. The Defendant also faces a criminal forfeiture allegation.

Co-defendants Mitchell and Simmons also stand charged in the Second Superseding Indictment with, *inter alia*, the same Racketeering Conspiracy charge as Defendant. All three defendants are charged with membership in, participation in, and/or association with the Nine

1

Tre Gangsters (hereinafter "NTG"), alleged to be a criminal enterprise, in violation of Title 18, United States Code, Section 1962(d).

## INTRODUCTION

Two issues arise when the Government offers a gang expert at trial. First is the question of whether gang opinion testimony is reliable. *See* Placido G. Gomez, *It Is Not Simply Because an Expert Says It Is So: The Reliability of Gang Expert Testimony Regarding Membership In Criminal Street Gangs: Pushing the Limits of Rule 702*. St. Mary's L. J. 581, 589-590 (2003). Also, the Court must consider whether the prejudicial nature of the proffered gang expert's testimony outweighs its probative value. Susan Burrell, *Gang Evidence: Issues for Criminal Defense*, 30 Santa Clara L. Rev. 739 (1990). Gang experts are typically law enforcement officers "who ha[ve] significant law enforcement training focusing on gangs and gang related crime". *See* Placido G. Gomez, *supra*. Although experience-based experts are permitted to testify as to a fact or issue not generally known to the average person, the *opinions* offered by officers are typically suspect and "do not lend themselves to systematic scrutiny based on objective retesting, and the data cannot be [easily] validated." *Id.*

The word "gang" has a strong stigma attached to it. *See* Carly Zagaroli, *He's Pushin the Rock, Pullin' the Trigger and Perpetuating Fear: Why the Use of Gang Expert Testimony Should Be Substantially Limited in Criminal Trials*, Digital Commons at Michigan State University College of Law, p. 2 (2014). Thus, even the mention of a defendant's gang affiliation or association likely straddles the line of impermissible character evidence either by triggering general bias against gang members or the common assumption of "guilt by association." *Id.* (*citing* David Cole, *Hanging with the Wrong Crowd: of Gangs, Terrorists, and the Right of*

*Association*, 1999 SUP. CT. REV. 203, 224 (1999)).  Pair the mention of gang activity with the support of expert testimony and the risk of prejudice is substantially heightened.  *Id.*

## LEGAL STANDARD FOR THE ADMISSION OF EXPERT TESTIMONY BY PURPORTED GANG EXPERTS

The district court serves as a "gatekeeper" of expert testimony.  *See Daubert v. Merrill Dow Pharmaceuticals*, 509 U.S. 597 (1993).  Each court addresses whether a witness qualifies as an expert through what is supposed to be a very fact-specific inquiry.  *Id.* at 579-580.

A party must open a series of "gates" to qualify as an expert.  Judge Harvey Brown, *Eight Gates for Expert Witnesses*, 36 HOUS. L. REV. 743, 758 (1999).  Those gates include helpfulness, qualifications, relevancy, reliability and finally, the risk of prejudice.  *Id.*  Gang expert testimony also triggers the rule against character evidence under Rule 404 of the Federal Rule of Evidence.  *See* FED. R. EVID. 404.  Therefore, this Court should inquire whether the purpose of proposed gang testimony is offered to show that the Defendants acted in accordance with a particular propensity on a particular occasion.  *See id.*

Since the Government intends to offer expert gang testimony from Detective Steven Parker, The Court should first consider the helpfulness of his testimony, which implicates Rule 702 of the Federal Rules of Evidence.  The rule states that a witness may testify as an expert of his "knowledge will help the trier of fact to understand the evidence or …determine a fact in issue."  *See* FED R. EVID. 702.

Second, Detective Parker must be qualified to talk about or proffer an opinion on a subject.  FRE 702 allows "expert testimony in scientific, technical, or other specialized areas" so long as the witness has the requisite "knowledge, skill, experience, training, or education."  The

3

Defendants will address Detective Parker's lack of knowledge and qualifications in the argument that follows.

Courts are also required to assess whether the expert testimony is relevant to the case at bar. *See* FED. R. EVID. 402. *Daubert* further requires that the proposed expert's testimony be "relevant to the task at hand" and that it rests "on a reliable foundation." *Daubert* at 584-587. The relevance requirement means that the expert's testimony must "tend to prove or disprove some fact at issue in the proceeding". FED. R. EVID., 401. The relevancy threshold is low bar, but courts should not disregard this analysis. The United States Court of Appeals for the Eight Circuit has overturned a jury verdict in a case where a gang expert offered irrelevant testimony. *United States v. Street*, 548 F. 3d 618 (8th Cir. 2008).

In *United States v. Street*, the prosecution attempted to prove motive by showing that the defendant adopted a gang's policy against "snitches." *Id.* at 631. In *Street*, a detective testified about an outlaw motorcycle gang and its extensive criminal history. *Id.* However, it was undisputed that the defendant was not a part of that gang, but merely had associations with gang members. This is strikingly like the case against defendant Lassiter, who the Government has previously conceded was not a member of the Nine Trey Gangsters set of the United Blood Nation. The United States Court of Appeals for the Eighth Circuit held that the testimony was largely irrelevant because the expert's discussion about the gang's violent past had nothing to do with its "no snitch" policy. *Id.* at 632. Also, the defendant's ties with the gang did not tend to prove motive, since other witnesses testified that his associations with the gang were minimal at best. *Street*, 548 F. 3d at 633. The lesson to be derived from the opinion in *Street* is that the purported expert's testimony must at least aid the fact finder in determining some contested issue.

4

Assuming *arguendo* that the Government's gang expert testimony is relevant, the Court must also consider whether it is reliable. *See Daubert*, 509 U.S. at 591. In *Daubert*, the United States Supreme Court first addressed the reliability requirement for experts. *Id.* The Supreme Court laid out four non-exclusive factors that trial courts may consider when evaluating reliability, including:

> whether the theory or technique in question can be (and has been) tested, whether it has been subjected to peer review and publication, its known or potential error and rate, and the existence and maintenance of standards controlling its operation, and whether it has attracted widespread acceptance within a relevant scientific community.

*Id.* at 592-593. The Supreme Court's opinion in *Kumho Tire Co., Ltd. v. Carmichael* extended the *Daubert* analysis to any expert testimony rather than just scientific expert testimony. 562 U.S. 137, 147-148 (1999).

The final step of the analysis is the trial court's determination of what is traditionally known as the "403-balancing test". *See* FED. R. EVID. 403. This Court must analyze whether the danger of unfair prejudice substantially outweighs its probative value as to each of the Defendants. *Id.* "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the Court, in weighing possible prejudice against probative force…exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (*quoting* Jack B. Weinstein, *Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended*, 138 F.R.D. 631, 632 (1991)).

While considering whether the prejudicial nature of the gang expert's testimony substantially outweighs its probative value, the court must consider Rule 404 of the Federal Rules of Evidence. A gang expert's testimony may be held impermissible because it triggers the rule against character evidence. *See* FED. R. EVID. 404(a)(1). Typically, the evidence is

5

offered to boost the probability that the defendant committed the criminal act charged. *Id.* Although probative, evidence of a defendant's character is not admissible for the purpose of proving that the defendant acted in accordance with that character on a particular occasion. *Id.*

The reasons for excluding such evidence are "that there is a danger that a jury will convict a defendant to penalize him or her for… past deeds or simply because he or she is an undesirable person". *See* C.J.S. *Criminal Law* §. 1105 (2014) (citing *Masters v. People*, 58 P.3d 979 (Colo. 2002)). Also, "there is a possibility that the jury will overvalue the character evidence in assessing guilt for the crime charged" and "it is unfair to require a defendant to be prepared not only to defend against immediate charges, but also to disprove or explain his or her personality or prior actions." *Id.*

In assessing whether testimony is impermissible character evidence, courts are required to determining the purpose of the party's offer. *See United States v. King*, 230 F.3d 1361, 1366 (6th Cir. 2000).

In *United States v. Garcia*, the prosecution introduced a gang expert to support the state's theory of motive; that since the defendant was a member of a gang, he was more likely to agree and aid in the commission of a murder. *See United States v. Garcia*, 151 F.3d 1243 (9th Cir. 1998). The Ninth Circuit cautioned that "the theory that the defendant aided and abetted a murder by 'fanning the fires of gang warfare'" would be a smack of "guilt by association." *Id.* Thus, the courts look behind the offering party's asserted purpose and scrutinize whether the testimony tends to prove that purpose.

Many jurors believe that police officers possess an 'aura of special reliability and trustworthiness." Patrick Mark Mahoney, Note, *Houses Built on Sand: Police Expert Testimony*

6

*in California Gang Prosecutions: Did Gardeley Go Too Far?,* 31 Hastings Const. L.Q. 385 (2004).

Any mention of gang affiliation is highly inflammatory to the jury. In areas where jurors tend to distrust law enforcement and the criminal justice system, "these same people… have to live with gang violence within their families and neighborhoods. [T]he group of jurors who used to be the most favorable to a defendant all of a sudden becomes the least favorable." Erin R. Yoshino, *California's Criminal Gang Enhancements: Lessons From Interviews with Practitioners,* 18 USC Rev. of L & Soc. Just. 107, 135 (2008). This leads to the last issue, that a party's offering of gang expert testimony always triggers the character evidence rule. *See* Fed R. Evid. 404; *Gutierrez v. State*, 21 S.3d 2, 11 (2011). Gangs are so attached to the stigma of criminality that many jurors wish to punish the defendant for his affiliations.

## ARGUMENT

In the instant case, defendant Malek Lassiter ("Lassiter") is not a gang member. Therefore, any testimony regarding the structure of the United Blood Nation and its various subsets, including the Nine Trey Gangsters, is not helpful to the jury in adjudicating whether he is guilty of the crimes charged in Counts 22-30 of the Second Superseding Indictment, which all relate to four alleged attempted murders that purportedly occurred on December 27, 2015. Lassiter has previously filed a notice of alibi defense (ECF. Doc No. 300) and the Government has filed its Rule 12.1 response to assert that Lassiter was present at scene of these alleged crimes (ECF Doc. No. 322). Therefore, the admission of expert opinion testimony is not helpful to the jury in assessing whether Lassiter is guilty of the crimes charged and the admission of the gang expert's opinion testimony violates Rule 702.

7

Further, Detective Parker should not be permitted to interpret recorded jail calls that the Government intends to introduce. The Government intends to present evidence regarding the meanings and contexts of these calls from witnesses, including gang members, who were parties to the calls or members of the Nine Trey gangsters set of the United Blood Nation gang. Considering the Government's other evidence, Detective Parker's testimony is redundant, unnecessary and not helpful to the jury.

At the outset, Detective Parker's testimony is not admissible under Rule 702 of the Federal Rules of Evidence because he is not qualified to talk about or proffer an opinion on the operations or structure of local Nine Trey gangsters. Rule 702 allows "expert testimony in scientific, technical, or other specialized areas" so long as the witness has the requisite "knowledge, skill, experience, training, or education." Based on the discovery reviewed to date, counsel has no reason to believe that Detective Parker had any personal involvement in the investigation of the crimes for which the Defendants are charged. The defense is aware that Detective Parker has previously testified in two federal RICO cases in the United States District Court for the Western District of North Carolina. However, his testimony was also significantly limited by the trial judge in a recent case to restrict him from interpreting the slang terms utilized on recorded jail calls. *See United States v. Adoma*, Criminal Case No. 3:14cr229, Trial Transcript p. 20-37 (September 27, 2017) (*Attached as Exhibit A*). *See also* United States v. Davidson, 3:12cr188, Trial Transcript May 1, 2013, p. 1-18 (*Attached as Exhibit B*) (Granting a curative instruction upon defense counsel's objections to the interpretation of jail calls after the evidence was introduced).

In *United States v. Williams*, two defendants appealed their convictions for RICO conspiracy counts and both asserted that the admission of opinion testimony by Detective Parker

8

in interpreting jail calls constituted reversible error in a consolidated appeal. *United States v. Barnett*, Record No. 14-4866; *United States v. Williams*, Record No. 14-4885, p. 15-18 (4th Cir. March 24, 2016). The Fourth Circuit affirmed Barnett's conviction based upon the harmless error doctrine because it found that if "the district court erred in admitted the challenged testimony, the error would not have substantially swayed the jury's verdict as to Barnett." *Id.* at 16. Samantha Williams's RICO conspiracy conviction was reversed on other grounds, so the Court did not review this potential error as to her. *See id.* at p. 15-16, Footnote 1. These recent cases suggest that it may be reversible error to permit Detective Parker to offer expert opinion testimony as a "gang expert" at all and to interpret the meaning of jail calls. It should be noted in each of the cases cited in this paragraph that Detective Parker was personally involved in the investigation; unlike the case at bar.

Relevance and Reliability

Even if the Court determines that Detective Parker's testimony is admissible despite the arguments to the contrary, the indictment in this case, combined with the significant volume of discovery provided to counsel during the pendency of this case, indicates that the United States intends to present more than twenty (20) cooperating witnesses and/or co-defendants. These witnesses are expected to detail the background of the alleged gang activities. They are expected to testify about gang meetings, rankings, language, code words, conversations, and notable events during the timeline of the conspiracy. Detective Parker is a witness who has certainly had no personal contact with any defendant or witness at any point in time. His testimony about what meaning words or actions previously had is not relevant to the issues before the jury.

In the classic test of relevance, pursuant to Rule 403, to allow an "expert" witness to give unduly weight to his own interpretation of words and actions that can clearly be explained by the

9

witnesses themselves triggers an imbalance between probative value and prejudice. The probative value of Detective Parker's testimony is substantially outweighed by the prejudicial impact that a gang expert' opinion testimony will have on the jury. This "expert" testimony does not make a fact more or less probable than without his testimony, and there is no fact that needs Detective Parker's assistance in being proven. This is a conspiracy case with ample testimony of other alleged conspirators who can testify about the meaning of their words and actions.

In conclusion, Detective Parker's testimony is simply cumulative evidence, not permitted pursuant to Rule 702 or Rules 401 and 403. The admission of his opinion testimony will permit the Government to allow an "expert" to explain the history and prior violence associated with the Bloods as if it is a scientific issue that requires expert testimony. A history lesson on gang culture and the prior violence associated with the United Blood Nation will prejudice the jury against these Defendants and potentially create an opportunity for Lassiter to be found guilty by association.

WHEREFORE, the Defendants respectfully requests that this Court exclude the testimony of the United States' proposed gang expert, Detective Steven Parker.

MALEK LASSITER

_____/s/_____
Jason A. Dunn, Esq. (Virginia State Bar No.: 68117)
*Counsel for the Defendant*
Jason A. Dunn, PLC
565 N. Birdneck Road
Virginia Beach, VA 23451
Telephone: (757) 383-6848
Facsimile: (757) 383-6849
Email: Jason.dunn@jdunnplc.com

ANTONIO SIMMONS
_____/s/_____
Laura P. Tayman, Esq.
Virginia State Bar No.: 39268
Laura P. Tayman, P.L.L.C.
364 McLaws Circle, Suite 1A
Williamsburg, VA 23185
Phone: (757) 903-4445
Facsimile: (757) 544-9870
Email:  laura@taymanlaw.net
*Counsel for Antonio Simmons*

David M. Good, Esq.
780 Lynnhaven Parkway, Suite 400
Virginia Beach, VA 23452
Phone: (757) 306-1331
Facsimile: (888) 306-2608
Email:  dgood@dgooslaw.com
*Counsel for Antonio Simmons*

NATHANIEL MITCHELL

_____/s/_____
Emily Munn, Esq.
Virginia State Bar No.: 46390
Bischoff Martingayle, PC
208 E. Plume Street, Suite 247
Norfolk, VA 23510
Phone: (757) 440-3546
Facsimile: (757) 440-3924
Email:  Emily@bischoffmartingayle.com
*Counsel for Nathaniel Mitchell*

Lawrence Hunter Woodward, Jr., Esq.
Virginia State Bar No.: 21756
Shuttleworth, Ruloff, Swain, Haddad & Morecock, P.C.
317 30th Street
Virginia Beach, VA 23451
Telephone: (757) 671-6047
Facsimile: (757) 671-6004
Email:  lwoodward@srgslaw.com
*Counsel for Nathaniel Mitchell*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 25th day of January 2018, I served a true copy of the foregoing via the CM/ECF system upon all counsel of record, including the following:

Laura P. Tayman, Esq.
Virginia State Bar No.: 39268
Laura P. Tayman, P.L.L.C.
364 McLaws Circle, Suite 1A
Williamsburg, VA 23185
Phone: (757) 903-4445
Facsimile: (757) 544-9870
laura@taymanlaw.net
*Counsel for Antonio Simmons*

David M. Good, Esq.
780 Lynnhaven Parkway, Suite 400
Virginia Beach, VA 23452
Phone: (757) 306-1331
Facsimile: (888) 306-2608
dgood@dgooslaw.com
*Counsel for Antonio Simmons*

Emily Munn, Esq.
Virginia State Bar No.: 46390
Bischoff Martingayle, PC
208 E. Plume Street, Suite 247
Norfolk, VA 23510
Phone: (757) 440-3546
Facsimile: (757) 440-3924
Emily@bischoffmartingayle.com
*Counsel for Nathaniel Mitchell*

Lawrence Hunter Woodward, Jr., Esq.
Virginia State Bar No.: 21756
Shuttleworth, Ruloff, Swain, Haddad & Morecock, P.C.
317 30th Street
Virginia Beach, VA 23451
Telephone: (757) 671-6047
Fax: (757) 671-6004
lwoodward@srgslaw.com
*Counsel for Nathaniel Mitchell*

Andrew C. Bosse, Esq.
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number: (757) 441-6331
Facsimile Number:(757) 441-6899
andrew.bosse@usdoj.gov

Joseph Depadilla, Esq.
Assistant United States Attorney
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-6358
Facsimile: (757) 441-6689
Joe.DePadilla@usdoj.gov

John F. Butler, Esq.
Assistant United States Attorney
Office of the United States Attorney
101 W. Main Street, Suite 8000
Norfolk, Virginia 23510
Telephone: (757) 441-6358
Facsimile: (757) 441-6689
John.f.butler@usdoj.gov

Teresa Wallbaum, Esq.
Special Assistant United States Attorney
Trial Attorney
Organized Crime & Gang Section
Criminal Division
Department of Justice
1301 New York Avenue, N.W.
Telephone: (202) 514-3594
Teresa.wallbaum@usdoj.gov

                                        _____/s/_____
                                        Jason A. Dunn, Esq. (Virginia State Bar No.: 68117)
                                        *Counsel for the Defendant*
                                        Jason A. Dunn, PLC
                                        565 N. Birdneck Road
                                        Virginia Beach, VA 23451
                                        Telephone: (757) 383-6848
                                        Facsimile: (757) 383-6849
                                        Email: Jason.dunn@jdunnplc.com