```
            IN THE UNITED STATES DISTRICT COURT
        FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                    CHARLOTTE DIVISION

UNITED STATES OF AMERICA,        )
                                 )
          Plaintiff,             )  3:12CR188
                                 )  MAY 1, 2013
     vs                          )
                                 )
(9)  JAIMEL KENZIE DAVIDSON,     )
     a/k/a "I-Shine",            )
                                 )
(13) NATHANIEL GRAHAM,           )
     a/k/a "Nasty"               )
                                 )
(14) JOSEPH DARNELL GRAY,        )
     a/k/a "Killa"               )
                                 )
(18) KENTRELL TYRONE McINTYRE,   )
     a/k/a "Mustafa"             )
                                 )
(28) PERRY GORONTENT WILLIAMS,   )
     a/k/a "P-Flame" and "Flame" )
                                 )
          Defendants             )
_____/
```

VOLUME 2, MORNING

TRANSCRIPT OF MOTION AND TRIAL TESTIMONY
BEFORE THE HONORABLE FRANK D. WHITNEY
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE UNITED STATES:    JILL WESTMORELAND ROSE
                          U. S. Attorney
                          100 Otis Street
                          Asheville, NC 28801


                          DANIEL R. RYAN
                          U. S. Attorney's Office
                          227 W. Trade Street
                          Suite 1700
                          Charlotte, NC 28202

APPEARANCES CONTINUED:

| | |
|---|---|
| FOR DEFENDANT DAVIDSON | ERIC J. FOSTER<br>16 Eagle Street<br>Suite 200<br>Asheville, NC 28801 |
| FOR DEFENDANT GRAHAM | CHARLES HENRY HARP, II<br>28 Vance Circle<br>Lexington, NC 27292<br>Asheville, NC 28801 |
| FOR DEFENDANT GRAY | MARK A. JONES<br>Bell, Davis & Pitt<br>100 N. Cherry Street<br>Suite 600<br>Winston-Salem, NC 27101 |
| FOR DEFENDANT McINTYRE | STACEY DAWN RUBAIN<br>Quander & Rubain<br>300 N. Main Street<br>Suite 2020<br>Winston-Salem, NC 27101 |
| FOR DEFENDANT WILLIAMS | RICHARD H. TOMBERLIN<br>312 W. Trade Street<br>Suite 502<br>Charlotte, NC 28202 |

Proceedings reported and transcript prepared by:

JOY KELLY, RPR, CRR
U. S. Official Court Reporter
Charlotte, North Carolina
704-350-7495

```
                        I N D E X
```

**MOTION** ............4

**WITNESS**                                                    **PAGE**

STEPHEN PARKER

   Direct Examination By Ms. Rose ...............21
   Cross Examination By Mr. Foster ..............55
   Cross Examination By Mr. Harp ................95
   Cross Examination By Ms. Rubain ..............99
   Cross Examination By Mr. Tomberlin ..........111
   Redirect Examination By Ms. Rose ............120
   Redirect Examination By Mr. Foster ..........129
   Recross Examination By Mr. Harp .............133
   Recross Examination By Ms. Rubain ...........135
   Recross Examination By Mr. Tomberlin ........136
   Further Redirect Examination By Ms. Rose ....136


                    **GOVERNMENT'S EXHIBITS**

**NUMBER**                                                  **ADMITTED**

8, 8A; 10, 10A ...................................53
8B ...............................................53
10B ..............................................54
11 ...............................................46
13A ..............................................36
14, 14A ..........................................39
15, 15A ..........................................39
16, 16A ..........................................40
17, 17A; 18, 18A; 19, 19A;20, 20A ................42
21, 21A; 22, 22A; 23, 23A; 24, 24A; 25, 25A; 26,426A
CERTIFICATE OF REPORTER .........................141

```
 1                    P R O C E E D I N G S
 2              (Court called to order at 8:50 a.m. and defendant
 3    present in courtroom.)
 4              THE COURT:  Good morning.
 5              We left yesterday with the issue of Officer Parker's
 6    ability to testify or competency to testify about Bloods lingo
 7    or phraseology, and I'll ask collectively the four defense
 8    counsel what you are seeking this morning.
 9              MR. TOMBERLIN:  Richard Tomberlin for Perry
10    Williams.  I'm going to adopt Ms. Rubain's motion, position.
11    Let her go forward with it.
12              THE COURT:  All right.  Mr. Harp or Mr. Foster?
13              MR. HARP:  Me, too.
14              MR. FOSTER:  She is prepared to argue, so I'm going
15    on adopt it as well, but certainly Mr. Davidson does object,
16    make the same objection he made yesterday as to all that
17    testimony.
18              THE COURT:  All right.  And I just want to make it
19    clear, the objection is just to his testimony with regard to
20    the language of different sets of the Bloods?
21              MS. RUBAIN:  Your Honor, I think -- I'm sorry.
22              MR. FOSTER:  I'm sorry, I just want to clarify.  We
23    did also object to much of Officer Parker's other testimony
24    regarding testimony he made about -- based on his training and
25    experience; about what he learned about gangs.  My
```

```
 1  understanding that was overruled but I certainly don't want to
 2  abandon the objection.
 3          THE COURT:  That was overruled.  My ruling yesterday
 4  stands today on that, so that issue is preserved for appeal.
 5          MR. TOMBERLIN:  You also had a objection, Your
 6  Honor, with respect to characterizing what he claimed as
 7  criminal conduct and other conduct that he synthesized, as I
 8  understood it, from these recordings and listened to.  He
 9  generally referred to criminal conduct, drug dealing, and gave
10  characterizations.
11          THE COURT:  Wasn't that all tied -- that was tied
12  into his interpretation of the code or the language.
13          MR. TOMBERLIN:  Your Honor, most of it appeared to
14  be, but there were times when he made statements such as the
15  co-conspirators did thus and so.
16          THE COURT:  Oh, and you object to that, and I had
17  him change his statement to "alleged co-conspirators."
18          MR. TOMBERLIN:  Okay.
19          THE COURT:  So all those objections are on the
20  record, and my ruling stands whether they sustained the ruling
21  or overruled -- whether I sustained the objection or overrule
22  the objection.  One moment.
23          (Judge speaks with law clerk.)
24          THE COURT:  Officer Parker, could you step out for a
25  minute so we don't say something that in theory could impact
```

```
 1  your testimony.  I know you're the case agent and normally I'd
 2  have you stay in, but since we're discussing your testimony, I
 3  think you should just step out.
 4              THE WITNESS:  Yes, sir.
 5              (Officer Parker steps out of the courtroom.)
 6              THE COURT:  All right.
 7              MS. RUBAIN:  Your Honor, I also had a objection
 8  which is what I thought that we were leaving last evening to
 9  discuss in terms of Officer Parker's interpretation of the
10  wire and the conclusions he made based upon what he heard on
11  the wires.
12              I went ahead and I reviewed the Palazzio (ph) case
13  and the Ayla case and Perez-Amana case and I don't disagree
14  with the Court's ruling that Officer Parker can testify about
15  the general practices of the UBN, what he's learned in his
16  training and experience about the general lingo used by member
17  of UBN.  He can't make the conclusion that what he heard on
18  the wires was UBN lingo.  He can't make the conclusion that
19  what he heard on the wires was discussion of X, Y and Z, and
20  there were plenty of instances yesterday where he did that.  I
21  believe that's argument to be made by the government at
22  closing.
23              THE COURT:  Can't he say it's my opinion based on my
24  training and experience that that particular sentence was --
25  certain code words in it referred to drug trafficking?
```

```
 1          MS. RUBAIN:  Your Honor, I don't believe he can make
 2   that conclusion.  I believe that the case law is very clear
 3   that he can testify based on information and what he's learned
 4   during this investigation of numerous gang prosecutions; what
 5   he's learned in terms of interrogating suspects who have
 6   admitted to being members of gangs, but he can't then take
 7   that information and then make the conclusion before this jury
 8   that what he's heard was defining what he's heard.  That's
 9   what we're here for the jury to determine.
10          I mean, you know, I think it's pretty clear when we
11   talk about gang experts.  They don't have scientific
12   experience.  They don't have technical experience.  They are
13   going on their investigative experience.
14          THE COURT:  No, I understand.  I agree with you up
15   to the last portion of your argument that he can't say I
16   believe this is code for drug trafficking.  Who testifies to
17   that?  I mean, some -- a co-conspirator comes in and says "We
18   meant drug trafficking"?
19          MS. RUBAIN:  Your Honor, not to make the argument
20   for the government, but I think what the government does is
21   say you heard Officer Parker testify based on his experience
22   what lingo is used by the UBN, you heard these wires, you
23   heard that lingo used.  You make the conclusion.  They can't
24   use Officer Parker --
25          THE COURT:  So as long as he doesn't say "I heard
```

```
 1   it.  I listened to this wire communication and it is my
 2   opinion that that was, in fact, a drug deal," you don't want
 3   him to say that.  But you will allow him to say these words
 4   mean drug trafficking; these words mean conspiracy to commit
 5   murder or to take out a contract on somebody.  These words
 6   refer to hierarchy.  You don't have any problem with him
 7   testifying to that?
 8              MS. RUBAIN:  Your Honor, of course I have a problem.
 9   I disagree with that but I believe that's the law of the
10   Fourth Circuit.
11              THE COURT:  Okay.  That's fair.
12              MS. RUBAIN:  And I went back in my notes and I found
13   three instances where he said this was gang lingo contained in
14   the conversations he heard.  That's where my objection is.  He
15   can't make that conclusory statement.
16              I would ask the Court to give some type of curative
17   instructions saying you might have heard Officer Parker
18   testify regarding what his interpretation of these audio
19   recordings were.  That's for you to decide.  He can't give you
20   his opinion on that.  He can discuss -- however the Court
21   wants to the phrase it.  But that was my issue.  I think his
22   testimony yesterday was replete with instances where he was
23   making conclusions about what he's heard about discussed in
24   these wires and I think that's objectionable.  He can't do
25   that.
```

```
1              THE COURT:  All right.  Whose argument?  Mr. Ryan.
2              MR. RYAN:  Yes, Your Honor.
3              I think the case law is clear that if the case
4    agent, officer, is testifying based on his experience in this
5    case, he can offer his lay opinion based on his training and
6    experience about what those words mean.  And I think --
7              THE COURT:  Well she's saying you can do that.  She
8    is just saying that he can't -- he can't conclude that this
9    was a drug trafficking phone call, said -- but he can't say
10   here's the phone call, you've heard the phone call, I heard
11   the phone call, and based on my training and experience
12   certain words mean this, this, and this, and then instead of
13   linking -- he doesn't do the final linkup.
14             MR. RYAN:  It's what his opinion is.  It's not --
15   it's his lay opinion.  701.  In my opinion this is what it
16   means.  Calling it a conclusion is a red herring.  It's an
17   opinion.  On cross-examination they will have every chance to
18   say, "That's just your opinion, isn't it, Mr. Parker?  You've
19   never been in a gang."
20             MS. RUBAIN:  Your Honor, my response to that would
21   be his opinion testimony making conclusions would be so -- I
22   think have such weight for this jury that it prejudices us.
23   We can't repair, you know, we can't repair the damage he does
24   on saying those conclusions on cross-examination because he's
25   going to say, yes, it's my conclusion based on my training and
```

1  experience. It's my conclusion based on then years of being a
2  task force officer. That's going to carry a lot of weight
3  with the jury. It's for the jury to determine what they heard
4  in those wires, and it's for the jury to determine what the
5  conclusion is in terms of the language they heard and what it
6  means. He can testify, "Generally speaking, in my training
7  and experience, UBN members use this type of language." He
8  can't say and make that connection in these phone calls I
9  conclude this is what they meant.
10            THE COURT: All right. Let me say --
11            MR. RYAN: Your Honor, if I may, just one thing?
12  Sorry to interrupt.
13            The Seventh Circuit has addressed this particular
14  argument and rejected it. The Seventh Circuit says in USB
15  Moreland in 2012 that it would not have been improper to
16  introduce to the jury you have an experienced investigator
17  rather than as a novice listening to taped conversations of
18  drug conspirators for the first time anymore than it is
19  improper to ask an eyewitness whether he has good vision. It
20  goes to his credibility of his opinion, his experience.
21            THE COURT: Now, Officer Parker hasn't qualified
22  under 701 or 703, but let's just assume he was, and then that
23  means Rule 704 applies. 704(b) says in a criminal case an
24  expert witness must not state an opinion about whether the
25  defendant did or did not have a mental state or condition. It

1  constitutes an element of the crime charged or of a defense.
2          Does that apply here or not? I mean it says --
3  "mental state" I don't think applies, or "condition," and say
4  that the conclusion is that was a drug transaction deal over
5  the phone, isn't that an element of RICO? Isn't that one of
6  the RICO activities as a part of pattern of racheteering
7  activity, RICO predicate?
8          MR. RYAN: Yes, drug trafficking is a RICO
9  predicate, Your Honor, but he's not testifying as to whether
10 or not the transaction was illegal, whether the defendants had
11 the intent, knew it was a narcotic substance or have the
12 requisite state of mind. He's saying based on his opinion,
13 this was a transaction involving crack cocaine.
14         THE COURT: All right. I see.
15         Ms. Rubain, any further argument?
16         MS. RUBAIN: Your Honor, I think the Court has got
17 to the gist of what my argument was in citing 704.
18         Again, not to belabor this, but I think the law in
19 the Fourth Circuit is clear about what law enforcement
20 officers can testify based on their training and experience
21 about practices of gangs. We got into a lot of specific
22 testimony about what this officer heard in this particular
23 case that I believe was conclusory; I believe was opinion
24 testimony. I don't believe the jury should have heard that.
25         MR. RYAN: And Your Honor, I think what defense

```
 1   counsel is trying to make us do is qualify him as a expert and
 2   talk about generally what the UBN does.  He's the case agent
 3   who saw the facts and heard the wires in this case and is
 4   testifying about what they mean in this case based on what
 5   he's heard in the wires.
 6            701 says that all you need for a lay witness to
 7   establish an opinion is that the opinion is based on the
 8   perception of the witness, or the fact and circumstances that
 9   indicate his opinion is so based.  And that the statement of
10   opinion will be helpful to the understanding of the jury.
11            I don't think there's any doubt given the lingo here
12   that it will be helpful to the jury.
13            MS. RUBAIN:  Your Honor, Officer Parker's perception
14   is based on his years of experience as an investigator.  And I
15   believe there was testimony yesterday that he gave of the
16   structure of the UBN, the development of it.  I don't think
17   the government can contend that he did not give what we would
18   contend to be expert testimony about the UBN, and they can't
19   have it both ways I guess I would say.  Either he gives lay
20   opinion testimony and therefore we have to strike what he said
21   about the structure and development of UBN because that was
22   developed over time, or he can just give his lay opinion
23   testimony about what he heard on the wires, which has no basis
24   other than if he's qualified as a expert.
25            THE COURT:  I don't think the defense is asking for
```

```
 1   much.
 2              Yesterday I was hearing references to striking all
 3   of Officer Parker's testimony and I knew that was totally
 4   unfounded because I was aware of these Fourth Circuit
 5   decisions.  But I'm comfortable with putting it in the hands
 6   of the jury to make the final link.  That is, he can testify
 7   based on his training and experience these words, this lingo
 8   means this in ordinary English.  And he can say -- he
 9   certainly can testify that he was one of the agents or
10   officers supervising the wiretap and that he -- that he went
11   through the legal process to get the orders, and that he went
12   through the actual process of listening to the intercepts.
13   And then, you know, he can authenticate the intercepts.  You
14   all can introduce them, but just leave that last little
15   connection, leave it to the jury, because it is a really
16   critical issue of fact that they think that a certain word
17   means drug trafficking.  Let them make that last link.
18              So the limiting instruction as proposed, Ms. Rubain,
19   I think is reasonable in this context.
20              Mr. Ryan, you're probably right.  Rule 701 allows a
21   lot more latitude but I'd rather be cautious and save -- and
22   leave that last little link with the jury.
23              MR. RYAN:  Your Honor, can I just mention one thing,
24   not going back and treading new ground, but while your ruling
25   with regard to lingo, what about the structure?  What about
```

```
 1   things he learned on the wire about how the UBN was
 2   structured.  Not based on his training and experience but what
 3   he heard the defendant's and the co-conspirators talk about on
 4   the wire about who was where, who was in charge, what sets
 5   were where.  I mean, those are facts he learned from the wire.
 6              THE COURT:  I think that's a little different.  It
 7   is based on his hearing a conversation and who is giving
 8   orders and who is giving directions.  Any person can draw an
 9   opinion as to that.  It's sounds like, you know, phone caller
10   A is giving orders to phone caller B, and anyone can say
11   that's my opinion from just listening to the tapes.
12              All right.  Would you craft that limiting
13   instruction, curative instruction?  You said it, and I started
14   to write it down, but you were talking too fast.
15              MS. RUBAIN:  Your Honor, I believe I said something
16   to the effect of -- I don't know.  What did I say?
17              THE COURT:  Something -- you may have heard
18   Officer Parker conclude that certain telephone -- or telephone
19   conversations were I guess drug deals or something like that.
20              MS. RUBAIN:  Your Honor, I was really -- I think
21   what I was going towards is you may have heard Officer Parker
22   testify regarding his -- I don't know.
23              THE COURT:  Well, you had the word "conclude" or
24   "conclusion" in there.
25              MS. RUBAIN:  The UBN lingo or certain things being
```

```
 1   said in the telephone conversations by the participants were
 2   UBN gang lingo.
 3            THE COURT:  Well, but it is UBN gang lingo because
 4   there are odd words in the conversation.  The question is the
 5   connection between the lingo -- converting the lingo or
 6   translating the lingo into ordinary English, so to speak.
 7            MS. RUBAIN:  I guess I would say you heard
 8   Officer Parker testify regarding his opinion as to the
 9   language used in the conversations of the wire, maybe.
10            MS. ROSE:  Meaning of the words.
11            MS. RUBAIN:  Meaning of the words.
12            THE COURT:  Yeah, it's the meaning of the words.
13            MS. RUBAIN:  And concluding that that meant that
14   they were drug transactions or other criminal activity.  Maybe
15   something --
16            MR. RYAN:  Your Honor, if I understood our prior
17   argument, the gist of it is that Officer Parker testified
18   about what he understands these words to mean in the UBN, but
19   he can't testify that that's exactly what these defendants
20   meant when they said it.
21            THE COURT:  Exactly.  So why don't the two of you --
22   we'll take a five-minute recess.  The two of you work it out.
23   Okay.
24            MR. FOSTER:  If I could ask for just one
25   clarification.  I'm making the assumption and I want to make
```

```
 1   sure I'm right about this, that the decision is predicated on
 2   the fact that the jury is going to hearing these phone calls.
 3   I'm hoping the Court is not --
 4              THE COURT:  I'm presuming -- that's what Mr. Rose
 5   said, she is going to play the phone calls I guess starting
 6   this morning.
 7              MR. FOSTER:  I don't think he should be able to give
 8   conclusions about stuff in phone calls that the jury is never
 9   going to hear.
10              THE COURT:  No, he's going to hear them.  These --
11   yes, he's going to hear them because that's why we
12   introduced -- I admitted the, the government moved to
13   introduce the DVDs and the optical disk.
14              MR. FOSTER:  Okay.
15              THE COURT:  So we'll be in recess for five minutes.
16              (Recess taken.)
17              THE COURT:  First, I want to note that we have
18   received a brief inquiry from the jury, a short inquiry I
19   should say.  Quote, "We're having confusion as to defendant's
20   names when witness are referring to them."
21              Probably because Officer Parker hasn't testified
22   about any of the defendant yet as I recall, so they've heard
23   the four defendants' names, and they did not -- whoever had
24   this question, did not write those names down, so they are
25   thinking that Officer Parker's testimony about Mr. Barnett and
```

```
 1   Mr -- who else testified yesterday?
 2          MR. RYAN:  Robinson.
 3          THE COURT:  That they are thinking that they are
 4   defendants in the courtroom this morning.  They are, of
 5   course, not.
 6          I'm also -- I don't think this is inappropriate that
 7   they might have discussed this, but I'm going to remind them
 8   they aren't supposed to discuss the case, but they are
 9   permitted to send us inquiries when they are having a hard
10   time understanding a witness's testimony for whatever reason.
11   You all agree I can entertain such questions like that?
12          MR. HARP:  Yes.
13          THE COURT:  All right.  So do we have a proposed
14   curative instruction.
15          MR. RYAN:  Yes, Your Honor.  I think what we came to
16   was something along the lines of --
17          THE COURT:  Do you have it written down?
18          MR. RYAN:  Yeah, but my handwriting is terrible.
19   I'll tender it to the Court.
20          THE COURT:  Just speak slowly.
21          MR. RYAN:  "You have heard Officer Parker testify
22   about his opinions of the meanings."
23          THE COURT:  "Of the meetings"?
24          MR. RYAN:  "Meanings."
25          THE COURT:  "Meanings".  Okay.
```

```
1          MR. RYAN:  My diction might be as bad as my
2    handwriting.  "Of certain words."
3          THE COURT:  Okay.
4          MR. RYAN:  "Used in conversations captured on the
5    wiretaps.  While Officer Parker can testify about the general
6    meaning of terms used by the UBN --"
7          THE COURT:  "Used by the UBN" or "by UBN"?
8          MR. RYAN:  "Members of the UBN."
9          THE COURT:  All right.
10         MR. RYAN:  "He cannot offer his conclusions about
11   what the speakers on those particular conversations meant."
12         THE COURT:  All right.  Thank you.
13         MR. RYAN:  "To the extent you believe you heard any
14   such conclusions yesterday, you should disregard them."
15         THE COURT:  Any time I'm taking my version of
16   shorthand, I appreciate the hard work of the court reporter,
17   who definitely has the hardest job in the courtroom.
18         THE COURT:  All right.  Anything else before we
19   bring the jurors in?
20         MS. RUBAIN:  No, Your Honor.
21         MR. TOMBERLIN:  No, Your Honor.
22         MR. RYAN:  No, Your Honor.
23         THE COURT:  Thank you.  Let's bring them in.
24         (Jury enters courtroom at 9:20 a.m.)
25         THE COURT:  Good morning.
```