# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

**UNITED STATES OF AMERICA,**

**v.**                                    **Criminal No. 2:16cr130**

**ANTONIO SIMMONS,**

**NATHANIEL TYREE MITCHELL,**

**and**

**MALEK LASSITER,**

**Defendants.**

## MEMORANDUM OPINION & ORDER

This matter is before the Court on Defendants' post-trial
motions seeking: (1) leave to file late motions, ECF Nos. 444,
447; and (2) to set aside their verdicts as to certain counts
and/or to obtain a new trial, ECF Nos. 445, 448.[1]   Defendants'
motions seeking leave to file late motions are **GRANTED** to the
extent they seek leave to file the motions already before the Court
predicated on the Supreme Court's recent decisions in Carpenter v.

---

[1] Also pending are Defendant Simmons' unopposed motion seeking to adopt a
reply brief filed by his co-defendant, ECF No. 494, and a subsequently filed
"joint motion," submitted by all three Defendants, seeking a new trial based
on "newly discovered evidence." ECF No. 500. Although Defendant Simmons'
unopposed procedural motion seeking to adopt a reply brief is **GRANTED** herein,
the Court will address the motion seeking a new trial by separate Order.

United States, 138 S. Ct. 2206 (2018), and Sessions v. Dimaya, 138 S. Ct. 1204 (2018).[2]

On November 1, 2018, after receiving supplemental briefing relevant to the Dimaya motions, this Court conducted a hearing on the merits of Defendants' Carpenter and Dimaya motions. At such hearing, the Court fully addressed Defendants' motions for a new trial predicated on Carpenter, formally **DENYING** such motions from the bench based on the application of the "good faith exception" to the warrant requirement. Additionally, the Court denied in part, and took under advisement in part, Defendants' motions predicated on Dimaya. For the reasons discussed below, Defendants'

---

[2] Defendants filed pre-trial motions challenging the admissibility of "Cell Site Location Information" obtained without a warrant, with one Defendant further requesting that trial be stayed pending the Supreme Court's resolution of Carpenter. ECF Nos. 141, 150, 223-24. This Court denied such motions. ECF No. 263. While the Court does not recall Defendants similarly advancing a pre-trial challenge to the § 924(c) counts based on an argument similar to that raised in Dimaya, all of the § 924(c) charges in the second superseding indictment validly stated an offense under the law at the time Defendants were charged based on the § 924(c)(3)(B) "residual clause," which as discussed herein, was invalidated as a result of the ruling in Dimaya. Defendants now request leave to file both their Carpenter and Dimaya motions outside the fourteen-day window for post-trial motions. ECF Nos. 444, 447. To the Government's credit, the Government does not directly oppose the request for leave in light of the two recently decided Supreme Court cases. Moreover, this Court has already granted all parties' unopposed motions seeking briefing extensions on these issues and granted the request to continue Defendants' sentencing hearings in order to allow the trial transcripts to be prepared. See ECF Nos. 439, 451, 463. The Government's opposition to the motions now before the Court is therefore limited to: (1) opposing any further defense motions that do not rely on Carpenter or Dimaya; and (2) contesting the merits of Defendants' now-pending motions seeking a new trial and/or judgment of acquittal. ECF No. 464, at 3. The Court therefore grants the unopposed motions seeking leave to file late motions, finding that the timing of the Supreme Court's opinions in Carpenter and Dimaya excuse the Defendants' failure to file a motion and/or seek an extension within the fourteen-day filing period. See Fed. R. Civ. P. 29(c), 33(b), 45(b); see also ECF Nos. 436-38 (filed days after Carpenter was decided).

Dimaya motions are **GRANTED** with respect to Count 30, and are **DENIED** in all other respects.

A.

Defendants' motions challenge numerous § 924(c) "firearm in furtherance of a crime of violence" convictions predicated on the definition of "crime of violence" set forth in 18 U.S.C. § 924(c)(3), arguing that the Defendants' underlying offenses of conviction do not satisfy the § 924(c)(3)(A) "force clause" and that the § 924(c)(3)(B) "residual clause" is unconstitutionally vague as established by Dimaya.

After a lengthy analysis on the record at the hearing, the Court concluded that Circuit precedent requires this Court to apply the "categorical approach" to both prongs of § 924(c)(3), even though such approach has severe drawbacks. See In re Irby, 858 F.3d 231, 233-34 (4th Cir. 2017); see also United States v. Eshetu, 898 F.3d 36, 37 (D.C. Cir. 2018); United States v. Davis, 903 F.3d 483, 485 (5th Cir. 2018). Applying such categorical approach, the Court then found that the § 924(c)(3)(B) residual clause is unconstitutionally vague. Dimaya, 138 S. Ct. at 1223; In re Hubbard, 825 F.3d 225, 231 n.3 (4th Cir. 2016).

Notwithstanding such finding, the Court rejected, on the record, Defendants' arguments challenging the § 924(c) crimes charged in Counts 4, 6, 9, 12, 13, 16, 19, 21, 23, 25 and 28 based on Defendants' contention that "VICAR murder" and "VICAR attempted

3

murder," as cross-referenced to Virginia law, are not "crimes of violence" under the § 924(c)(3)(A) force clause. In reaching such ruling, the Court first concluded, with little analysis needed, that "generic" murder constitutes a "crime of violence" under the § 924(c)(3)(A) force clause. Umana v. United States, 229 F. Supp. 3d 388, 395 (W.D.N.C. 2017); see Irby, 858 F.3d at 237; 18 U.S.C. § 1111(a); United States v. Darden, -- F. Supp. 3d. --, No. 3:17cr124, 2018 WL 5784057, at *27 (M.D. Tenn. Nov. 2, 2018) ("It cannot be seriously argued that murder [under 18 U.S.C. § 1111(a)] is anything other than a crime of violence . . . .").

The Court then considered murder as punished under the cross-referenced Virginia statute, noting that the Court interpreted the law as requiring it to consider the elements of such state law crime in order to ensure that the federal VICAR murder offenses at issue are proper predicate violent crimes that could support a conviction under § 924(c)(3)(A). Umana, 229 F. Supp. 3d at 395. In analyzing Virginia's murder statute, Va. Code § 18.2-32, this Court concluded that all violations of such statute require the use, attempted use, or threatened use of physical force against another, thereby concluding that a violation of Va. Code § 18.2-32 satisfies the violent force requirement of § 924(c)(3)(A).

To the extent that the Court failed to clearly state on the record that its analysis of Virginia law leads to the conclusion that VICAR murder, as cross-referenced to Virginia law, is itself

a "crime of violence" under § 924(c)(3)(A), the Court expressly makes such finding now. Stated differently, in concluding that all violations of § 18.2-32 require a malicious killing, committed through the application of violent force, the Court finds that the elements of Virginia murder are consistent with the elements of "generic" murder, to include first degree murder by starvation, and second degree murder committed with the degree of "malice" necessary to distinguish murder from manslaughter under Virginia law. Essex v. Com., 228 Va. 273, 280-81, 322 S.E.2d 216, 219-20 (1984); see Umana, 229 F. Supp. 3d at 394-97. Such finding leads to the conclusion that each federal VICAR murder conviction in this case is itself a "crime of violence" under the force clause set forth in § 924(c)(3)(A).

For the same reasons, the federal VICAR attempted murder counts for which a guilty verdict was returned in this case are "crimes of violence" under the force clause set forth in 924(c)(3)(A). See 18 U.S.C. § 924(c)(3)(A) (requiring the predicate crime to have, "as an element the use, attempted use, or threatened use of physical force against the person or property of another"). Accordingly, the Court reaffirms its oral **DENIALS** of Defendants' challenges to all of the § 924(c) convictions in this case for which the jury found that the firearm was used in furtherance of murder or attempted murder, which applies to all § 924(c) convictions other than Count 30.

**B.**

In addition to the detailed rulings the Court made on the record, the Court took under advisement Defendants' motions challenging Count 30 (possession and discharge of a firearm in furtherance of a crime of violence), as well as the related issue as to whether the claimed infirmity in Count 30 also undercuts the viability of Defendants' convictions on Counts 8, 15, 18, 27 and 29, all of which charge Defendants with VICAR assault with a dangerous weapon in violation of 18 U.S.C. § 1959(a). The Court addresses such matters below, in reverse order.

**1.**

First addressing Counts 8, 15, 18, 27 and 29, as discussed in this Court's prior Order, ECF No. 496, and at the November 1, 2018 hearing, this Court's consideration of Defendants' post-trial motions, attacking the Count 30 convictions for possessing a firearm in furtherance of a crime of violence based on the Count 29 VICAR assault with a dangerous weapon count, necessarily required the Court to carefully analyze the elements of Count 29 to determine whether such count satisfied the § 924(c)(3)(A) force clause applicable to Count 30. Engaging in such analysis raised questions with the Court as to whether Va. Code § 18.2-282 was a valid predicate state-law crime for a VICAR assault with a dangerous weapon conviction under 18 U.S.C. § 1959(a). The Court therefore asked the parties to brief and argue such issue.

Having considered the parties' briefs and oral presentations, the Court finds that any challenge to the viability of the § 1959(a) VICAR assault with a dangerous weapon offenses charged in Counts 8, 15, 18, 27 and 29 predicated on the propriety of a cross-reference to Va. Code § 18.2-282 were waived by Defendants, as expressly asserted by the Government at oral argument.[3] Pursuant to Rule 12 of the Federal Rules of Criminal Procedure, a motion challenging "a defect in the indictment or information, including: . . . failure to state an offense," must be raised "<u>by pretrial motion</u> if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12(b)(3) (emphasis added).[4] Such Rule goes on to outline the "Consequences of Not Making a Timely Motion Under Rule 12(b)(3)," which are as follows: "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely" and may be considered only if the "party shows good cause." Fed. R. Crim. P. 12(c)(3).

---

[3] Additionally, the Government's earlier-in-time written opposition to any additional late-filed claims not predicated on <u>Dimaya</u> applies to the § 1959(a) issue raised by the Court.

[4] Prior to amendments promulgated in 2014, the text of Rule 12(b)(3) expressly allowed a district court to consider a claim that the indictment "fails . . . to state an offense" at "<u>any time</u> a case was pending." Fed. R. Civ. P. 12(b)(3)(B) (2013) (emphasis added). Because the instant criminal case was not initiated until September of 2016, there is no question that the amended Rule is applicable. Cf. <u>United States v. Bankston</u>, 820 F.3d 215, 228 (6th Cir. 2016).

7

Here, the legal test governing a challenge to the § 1959(a) charges would require the Court to consider the scope/elements of the "generic" definition of the charged violent crime (here "assault with a dangerous weapon") and determine whether the cross-referenced Virginia state-law crime falls within such generic definition, and it therefore does not turn on the litigated facts of the case. See United States v. Le, 316 F. Supp. 2d 355, 361-62 (E.D. Va. 2004) (citing Taylor v. United States, 495 U.S. 575, 599 (1990)); see also Descamps v. United States, 570 U.S. 254, 260-61 (2013). Although § 1959(a) is plainly directed at punishing the commission of violent crimes in aid of racketeering, determining whether a defendant violates § 1959(a) does not require an analysis of the statutory term "crime of violence," as defined in either 18 U.S.C. § 16(b) or 18 U.S.C. § 924(c)(3), thereby rendering the holding in Dimaya irrelevant to the viability of the § 1959(a) charges in this case. Accordingly, the recent decision in Dimaya does not provide "good cause" for Defendants' failure to raise a pretrial challenge to the § 1959(a) counts. Moreover, Defendants have not otherwise demonstrated "good cause" for failing to raise such claim pre-trial, and in fact, did not raise such claim in their post-trial motions, with such issue instead being raised by the Court for discussion. Accordingly, consistent with the Government's opposition to any further motions not directly related to Dimaya/Carpenter, ECF No. 464, at 3, as well

8

as the "waiver" argument advanced by the Government at the hearing, the Court finds that it is improper to reach the merits of the untimely challenge to the § 1959(a) counts.

**2.**

Next addressing the validity of Defendants' convictions on Count 30, such post-trial claim is directly impacted by the Supreme Court's intervening decision in Dimaya. For the reasons discussed on the record at the November 1, 2018 hearing, and as recapped above, this Court finds that Circuit precedent requires the application of the "categorial" approach to both prongs of § 924(c)(3), In re Irby, 858 F.3d at 233-34, and under such approach, Dimaya mandates the finding that the § 924(c)(3)(B) "residual clause" is void as unconstitutionally vague, In re Hubbard, 825 F.3d at 231 n.3.

Because Dimaya precludes the Government from relying on the "residual clause," the validity of all three Defendants' Count 30 convictions turns on whether either of the two purported "crimes of violence" on which such count is alternatively predicated has "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). As found by the jury on the special verdict form, Count 30 is predicated on Count One (RICO Conspiracy) and Count 29 (VICAR assault with a dangerous weapon). As previously noted, Count 30 is the only § 924(c) count that is not

9

alternatively predicated on VICAR murder, or VICAR attempted
murder, as the requisite "crime of violence."

i.

As already stated on the record at the hearing, the Court
finds that a RICO conspiracy does not have the use of violent force
as an element because: (1) such inchoate offense does not require
an overt act, Salinas v. United States, 522 U.S. 52, 63 (1997),
and an agreement to commit a violent illegal crime does not itself
involve actual, threatened, or attempted use of physical force,
see Velleff v. United States, 307 F. Supp. 3d 891, 895-96 (N.D.
Ill. 2018) (citing cases); United States v. White, 571 F.3d 365,
369 (4th Cir. 2009), abrogated on other grounds by Johnson v.
United States, 135 S. Ct. 2551 (2015) (observing that conspiracy
to commit robbery with a dangerous weapon under North Carolina law
"does not have 'as an element the use, attempted use, or threatened
use of physical force against the person of another'" as such crime
required only an agreement, to commit a crime, and an intent to
carry out the agreement);[5] (2) even if an overt act were required
under the RICO conspiracy statute, such overt act could likely be
completed through non-violent "preparation" to engage in violent

_____

[5] Although addressing an entirely different question, in United States v.
McCollum, 885 F.3d 300, 308-09 (4th Cir. 2018), the Fourth Circuit concluded
earlier this year that a conspiracy to commit VICAR murder in violation of
18 U.S.C. § 1959(a)(5) was not a "crime of violence" even under the more
expansive Guideline definition of such term because "generic" conspiracy
requires an overt act and a § 1959(a)(5) conspiracy does not.

10

acts (i.e., while the defendant is taking overt steps in preparation of the plan to use force, force is never used, threatened, or attempted); and (3) notwithstanding the Government's argument to the contrary, the "special sentencing factors" found by the jury in this case (which define two murders as the predicate "racketeering activity") do not transform the inchoate RICO conspiracy into a "crime of violence" because the elevated punishment that such special findings trigger is applicable under the categorical approach if the RICO conspiracy involves an agreement to engage in "racketeering activity" involving murder—it does not require as an element that the murders actually be committed. See Salinas, 522 U.S. at 65 ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself."). Accordingly, the Court finds that Dimaya precludes the Government from relying on the RICO conspiracy charged in Count One as the requisite "crime of violence" to support a guilty verdict on Count 30.

## ii.

The final issue is whether Count 29 (VICAR assault with a dangerous weapon in aid of racketeering) satisfies the § 924(c)(3)(A) force clause applicable to Count 30 such that Count 29 can validly serve as the predicate "crime of violence" necessary

to support Defendants' respective Count 30 convictions. Count 29 is a VICAR assault with a dangerous weapon offense under 18 U.S.C. § 1959(a), and to establish each Defendant's guilt to such count, the Government was required to "prove beyond a reasonable doubt[:] (1) that the organization was a RICO enterprise, (2) that the enterprise was engaged in racketeering activity as defined in RICO, (3) that the defendant in question had a position in the enterprise, (4) that the defendant committed the alleged [violent crime], and (5) that his general purpose in so doing was to maintain or increase his position in the enterprise." United States v. Fiel, 35 F.3d 997, 1003 (4th Cir. 1994) (emphasis added) (citations omission). The issue here turns solely on the fourth element.

Because the § 1959(a) VICAR statute alternatively defines "different offenses based on the predicate violent crime," such criminal statute is "divisible," thereby allowing the Court, under the "modified categorical approach," to consider "a limited class of documents to determine of what crime, with what elements, the defendant was convicted." Kinard v. United States, No. 3:16cv539-GCM, 2017 WL 4350983, at *4 (W.D.N.C. Sept. 29, 2017). Here, the second superseding indictment and jury instructions reveal that Defendants' respective § 1959(a) convictions, as charged in Count 29, were based on assault with a dangerous weapon, as cross-

12

referenced to Virginia Code §§ 18.2-53 and 18.2-282.[6]  Although the Court looks to such sources to properly apply the modified categorical approach, it does not analyze Defendants' actual conduct (which unquestionably involved the use of violent force and satisfied all elements of "generic" assault with a dangerous weapon).  Mathis v. United States, 136 S. Ct. 2243, 2249 (2016).  Rather, the Court applies a categorical analysis to determine whether the federal § 1959(a) VICAR assault with a dangerous weapon crime charged in Count 29, as explained to the jury in the Court's instructions of law, has as an element, the use, attempted use, or threatened use of violent force.

Here, the parties strongly dispute whether this Court should limit its analysis to the "generic definition" of "assault with a dangerous weapon" (Government's position) or whether its analysis must also extend to consideration of the specific elements of the cross-referenced Virginia statutes (Defendants' position).  Although the law is far from settled on this issue, in this Court's view, the short, but certainly not simple, answer is, Defendants

---

[6] The second superseding indictment does not reference Va. Code § 18.2-53, but instead cross-references Va. Code § 18.2-53.1.  The Government similarly quotes from Va. Code § 18.2-53.1 in its post-trial briefing.  ECF No. 464, at 27.  However, the jury instructions submitted by the Government, and ultimately read to the jury, reference and recite the text of Va. Code § 18.2-53 as the relevant state statute.  Because the jury was instructed on § 18.2-53, the Court does not consider the elements of § 18.2-53.1, further noting that, perhaps for their own valid reasons, neither party has raised such apparent incongruity before this Court.  Cf. Fed. R. Crim. P. 7(c)(2).

are correct.   Compare United States v. Jones, No. 7:16cr30026,

2017 WL 3725632, at *5 (W.D. Va. Aug. 29, 2017) (concluding that

"the generic definition of assault with a dangerous weapon applies

in examining whether the VICAR counts in the Superseding Indictment

qualify as crimes of violence under § 924(c)"), Cousins v. United

States, 198 F. Supp. 3d 621, 626 (E.D. Va. 2016) (analyzing generic

elements), and Kinard, 2017 WL 4350983, at *5 (analyzing "common-

law" elements),[7] with Umana, 229 F. Supp. 3d at 392 (analyzing

elements of the underlying state court crime), United States v.

Woods, -- F. Supp. 3d --, No. 17-20022, 2018 WL 4095037, at *4-*5

(E.D. Mich. Aug. 28, 2018) (same); and United States v. Solorzano,

No. 12CR236-GPC, 2017 WL 2172211, at *5-*6 (S.D. Cal. May 17, 2017)

(same); see also Desilva v. United States, No. 4:16cv4134, 2016 WL

6495393, at *6 (C.D. Ill. Nov. 2, 2016) (discussing the extreme

complexity of the necessary analysis, which requires "parsing

---

[7] To the extent the Government in this case, and/or the opinions in Jones
and Cousins, rely on the 2004 decision in Le for the proposition that the
district court should limit its focus to the elements of the generic crime,
this Court does not interpret Le in such manner.  Although Le did, in fact,
expressly reject any test that would turn on the manner in which "the state
labels the crime" at issue, it went on to analyze "whether the Virginia
statutes cited in the Indictment cover conduct that falls within the scope
of a generic assault with a dangerous weapon." Le, 316 F. Supp. 2d at 362.
Indeed, Le explained that the Court must compare "the elements of the state
statute and the elements of the violent crime, as it is generically defined"
in order to determine whether, consistent with the rule articulated by the
Supreme Court in Taylor, "the state offense, regardless of how it is labeled,
'corresponds in substantial part' to the [generically defined] violent
conduct."   Id. at 362-63.   As discussed herein, subsequent Supreme Court
cases have clarified, at least in the ACCA context, that "corresponds in
substantial part" means that the state statute does not capture conduct that
is broader than the generically defined offense.  Descamps, 570 U.S. at 260-
61.

14

through layers upon layers of meaning," and ultimately analyzing the elements of the cross-referenced Illinois state statute, but framing the § 924(c) issue as focusing not on whether all the elements in the "competing statutes" line up (as would be required in a § 1959(a) analysis), but rather, whether "the underlying criminal offense" has as an element "the use of force, the attempted use of force, or the threatened use of force"); cf. Violent Crimes in Aid of Racketeering (18 U.S.C. § 1959): A Manual for Federal Prosecutors at 25 n.27 (Dec. 2006),[8] https://www.justice.gov/jm/criminal-resource-manual-2090-rico-and-vcar-manuals (last visited Nov. 16, 2018) (explaining that when a § 1959 charge is based on a cross-reference to state law, the Government must prove all the requisite elements of the state offense, further noting in a footnote that if the state offense is "broader than the generic definition of the predicate Section 1959 crime of violence at issue, the jury should be specifically instructed that to convict [on the § 1959(a) offense] it must find all the elements that are necessary to satisfy the generic definition of the crime of violence at issue") (emphasis added).

The Court rejects the Government's contention that the analysis should stop at the generic level, and the Court does so because the jury in this case was instructed to base its verdict

_____

[8] Such source will be referred to herein as "DOJ VICAR Manual."

15

as to the fourth element of Count 29 on the Virginia state-court
offenses read to the jury, not the elements of "generic" assault
with a deadly weapon. See Mathis, 136 S. Ct. at 2248 (explaining
that "'[e]lements' are the 'constituent parts' of a crime's legal
definition"). Assuming, for a moment, that a state statute
punishes non-violent conduct, the Government's proposed "generic-
only" approach would allow the Government to establish guilt of a
1959(a) federal offense through cross-reference to a non-violent
state crime, but then establish that the same § 1959(a) federal
offense has violent force as an element merely because the generic
form of such federal crime requires the use, attempted use, or
threatened use of force. In such scenario, the jury, of course,
would never have been asked to consider such "generic"
requirements, thus leaving unanswered the question of whether the
defendant even committed the generic offense (and by committing
it, used violent force).

The Court finds such analytical flaw unworkable, and thus it
cannot faithfully apply the categorial approach to determine
whether the federal offense of conviction (§ 1959(a) VICAR assault
with a dangerous weapon) has "as an element" the use of violent
force if it limits itself to consideration of the elements of the
"generic" definition of assault with a dangerous weapon.
Accordingly, this Court will consider the elements of the Virginia
statute, upon which the Government relied at trial and the

16

Defendants now challenge, to determine whether such state statute, from a categorical perspective, is sufficiently similar to the generic definition of assault with a dangerous weapon to serve as a predicate offense, or whether it sweeps more broadly than the generic version and is applied by Virginia courts to capture non-violent conduct. See Mathis, 136 S. Ct. at 2251 (explaining in the analogous Armed Career Criminal Act ("ACCA") context: (1) "a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense"; (2) how an individual "defendant actually perpetrated the crime—what we have referred to as the underlying brute facts or means of commission,— makes no difference"; and (3) if the state offense at issue "cover[s] a greater swath of conduct than the elements of the" generic offense, this "mismatch of elements saves the defendant from an ACCA sentence" even if a defendant's actual conduct "fits within the generic offense") (internal quotation marks and citation omitted); cf. DOJ VICAR Manual at 23 (indicating that, when determining whether a state statute is a proper predicate for a § 1959 offense (a different question from whether a § 1959(a) offense is a "crime of violence" as defined in § 924(c)(3)(A)), "it is not dispositive that the defendant's underlying misconduct violated the generic definition of the particular crime at issue," but rather, "the dispositive issue is whether required elements of the [state] statute at issue substantially conform to the generic

definitions in 1984 of . . . assault with a dangerous weapon) (emphasis added).

Beginning with the scope of the "generic" crime of assault with a dangerous weapon, such species of aggravated assault requires either the use, the attempted use, or the threatened use of violent force. As argued by the Government, the analogous federal assault with a dangerous weapon statute is found in 18 U.S.C. § 113(c), and requires: (1) an assault, (2) with the use of a dangerous weapon, (3) with the intent to inflict bodily harm. ECF No. 464, at 25 (emphasis added). The Model Penal Code defines both simple assault and aggravated assault, Model Penal Code § 211.1, and it appears beyond debate that generic assault with a dangerous weapon is a form of aggravated assault, see ASSAULT WITH A DEADLY WEAPON, Black's Law Dictionary (10th ed. 2014) ("An aggravated assault in which the defendant, using a deadly weapon, threatens the victim with death or serious bodily injury. — Also termed assault with a dangerous weapon.").⁹ Looking to the portion

---

⁹ Black's Law Dictionary defines aggravated assault as: "Criminal assault accompanied by circumstances that make it more severe, such as the intent to commit another crime or the intent to cause serious bodily injury, esp. by using a deadly weapon." AGGRAVATED ASSAULT, Black's Law Dictionary (10th ed. 2014). It further defines "felonious assault" as: "An assault that is of sufficient severity to be classified and punished as a felony. See aggravated assault; assault with a deadly weapon." FELONIOUS ASSAULT, Black's Law Dictionary (10th ed. 2014). The Court notes that the Virginia statute at issue in this case, Va. Code. § 18.2-282, is a misdemeanor under state law, not a felony. That said, such fact does not appear to control the outcome because the VICAR statute does not expressly require that the § 1959(a) violent crime be a felony, although the "racketeering activity" that it furthers or impacts must itself be a felony. See 18 U.S.C. §§ 1959(a), 1961(1).

of the Model Penal Code definition of aggravated assault that references a deadly weapon, such provision states: "A person is guilty of aggravated assault if he . . . attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon." Model Penal Code § 211.1(2)(b).

In addition to the above, generic assault with a dangerous weapon can be committed through an intentional threat, and the elements of this species of the crime require "a physical act, utilizing a dangerous weapon, that signifies to the victim that the aggressor has the present ability to cause the threatened harm with the weapon, and that the weapon may be put to harmful use immediately." Cousins, 198 F. Supp. 3d at 626 (emphasis added); see Wayne R. LaFave, 2 Substantive Criminal Law § 16.3(b) (3d ed.) (explaining, in a section titled "Assault as intentional scaring," that "many jurisdictions have extended the scope of the crime of assault" to include not only battery-type assaults, but also an assault committed through intentionally threatening another in a manner that causes them to reasonably "fear immediate bodily harm") (emphasis added). At the risk of stating the obvious, whether an assault is committed through use of a dangerous weapon while committing or attempting a battery, or through use of a dangerous weapon in order to "threaten" another with violent force with the intent to place the victim in fear of immediate bodily injury, the employment of the dangerous weapon (with the intent to either harm

or scare), is the act that constitutes the "use, attempted use or threatened use" of violent force.

Considering next the disputed Virginia statute, here, the jury was instructed that each Defendant could be convicted of Count 29, VICAR Assault with a Dangerous Weapon as cross-referenced to Virginia law, if, among other elements, he assaulted another person "with a dangerous weapon, in violation of Va. Code Ann. § 18.2-53 and 18.2-282." Jury Instruction 80. The jury was further instructed as follows:

SECTION 18.2-53 PROVIDES THAT IT IS A FELONY IF ANY PERSON, IN THE COMMISSION OF, OR ATTEMPT TO COMMIT, A FELONY, UNLAWFULLY SHOOTS, STABS, CUTS, OR WOUNDS ANOTHER PERSON. 18.2-282 PROVIDES THAT IT IS UNLAWFUL FOR ANY PERSON TO HOLD OR BRANDISH ANY FIREARM OR ANY AIR OR GAS OPERATED WEAPON OR ANY OBJECT SIMILAR IN APPEARANCE, WHETHER CAPABLE OF BEING FIRED OR NOT, IN SUCH MANNER AS TO REASONABLY INDUCE FEAR IN THE MIND OF ANOTHER OR HOLD A FIREARM OR ANY AIR OR GAS OPERATED WEAPON IN A PUBLIC PLACE IN SUCH A MANNER AS TO REASONABLY INDUCE FEAR IN THE MIND OF ANOTHER OF BEING SHOT OR INJURED.

Id. As noted above, Defendants' challenge to Count 30 is predicated on the scope of Va. Code § 18.2-282 as incorporated into Count 29. ECF No. 445, at 27. The Government contests Defendants' characterization of the elements of Code § 18.2-282, but it fails to alternatively argue/demonstrate that § 18.2-53 is both applicable and sufficient to satisfy the § 924(c)(3)(A) force

clause.[10] Accordingly, the Court limits its analysis to the §
18.2-282 issue briefed by the parties.

    As discussed at the November 1, 2018 hearing, this Court's
primary concern regarding the elements of § 18.2-282 centered on
the decisions of the Virginia Court of Appeals in Huffman v. Com.,
51 Va. App. 469, 658 S.E.2d 713 (2008) and Dezfuli v. Com., 58 Va.

---

[10] Count 29, unlike all of the other assault counts charged in this case,
does not involve allegations that any victim was shot or otherwise wounded,
and thus the facial applicability of § 18.2-53 appears questionable, thereby
suggesting that Defendants' Count 29 convictions turn solely on the unlawful
brandishing of a firearm in violation of Va. Code § 18.2-282. The Government
argues that § 18.2-282 is alone sufficient to require the threatened use of
violent force, but apparently due to the difference between the state court
offense listed in the second superseding indictment (§ 18.2-53.1) and the
state court offense actually read to the jury (§ 18.2-53), the Government
does not analyze the elements of § 18.2-53, argue that such state statute
was in fact violated through the commission of Count 29, and/or demonstrate
that such state court offense has as an element the intentional (as
contrasted with reckless) use of violent force. The briefs filed by the
defense similarly point to § 18.2-53.1, but argue for its factual
inapplicability to Count 29, stating that this Court "quite correctly
understands" the pending motions to turn solely on the scope of § 18.2-282.
ECF No. 497, at 7. Although this Court questions the facial applicability
of § 18.2-53, it may be precluded, even under the modified categorical
approach, from considering Defendants' conduct in an effort to determine
which Virginia statute may be applicable. Were the Court to consider such
matter, it would further note that jury instruction 42, labeled "Proof may
be disjunctive" could have caused the jury to read the "and" between the
two listed Virginia state statutes as an "or," particularly as to Count 29.
However, regardless of whether this Court is permitted to consider the
actual conduct underlying Count 29 in order to determine which state statute
may be applicable, in light of the nature of Defendants' challenge to Count
30, and the Government having not demonstrated that Va. Code § 18.2-53 (a
different statute than that listed in the second superseding indictment)
categorically satisfies the dictates of the § 924(c)(3)(A) force clause,
this Court finds that the only viable path forward is to analyze the issue
raised by Defendants and briefed by the parties in their supplemental
filings—whether Count 29 is a "crime of violence" in light of the elements
of the accurately cross-referenced Virginia Code § 18.2-282. Cf. Mathis,
136 S. Ct. at 2256-577 (noting that when an indictment and jury instructions
do not speak plainly as to whether an alternatively phrased state statute
lists alternative elements or alternative means, the determination of
whether a "generic offense" was committed may not satisfy "Taylor's demand
for certainty") (citation omitted).

App. 1, 707 S.E.2d 1 (2011), both of which were decided subsequent to the analysis of § 18.2-282 contained in Le. In Huffman, the defendant was convicted under Va. Code § 18.2-282 in a scenario where it was undisputed that a firearm was "brandished" in the victims' presence, but unclear whether the gun was brandished "in such a manner as to induce fear in the mind" of the second of the two victims in that case. Huffman, 51 Va. App. at 472, 658 S.E.2d at 714. Huffman relied on earlier precedent establishing that § 18.2-282 has two elements: "(1) pointing or brandishing a firearm, and (2) doing so in such a manner as to reasonably induce fear in the mind of a victim." Id. (quoting Kelsoe v. Commonwealth, 226 Va. 197, 198 (1983)). On appeal, the defendant's conviction in Huffman was upheld based on the court's finding that the victim was reasonably apprehensive of bodily harm. Id. at 473, 658 S.E.2d at 715.

In Dezfuli, the Virginia Court of Appeals further clarified the state of the law in Virginia, distinguishing between the elements of Va. Code § 18.2-53.1 (use of a firearm in the commission of a felony) and § 18.2-282 (brandishing a firearm). Dezfuli, 58 Va. App. at 8-10, 707 S.E.2d at 4-5. As explained by the Virginia Appellate court:

> [I]n cases involving the threatening display of a firearm under Code § 18.2-53.1, the defendant must display his firearm to "promise punishment, reprisal or other distress to" the victim, whereas in cases involving brandishing under Code § 18.2-282, the

> defendant must merely brandish or display a firearm in
> such a manner as to reasonably "bring about or cause
> fear" in the mind of the victim.

Id. at 10, 707 S.E.2d at 5 (emphasis added). As part of such
comparison, the Dezfuli court also cited back to Huffman, and
summarized its holding as follows: "Huffman's conviction for
brandishing a firearm [was] affirmed where the evidence proved the
victim merely observed Huffman 'waving a handgun around in the
air' and asked him to 'put the gun away.'" Id. at 11, 707 S.E.2d
at 6 (quoting Huffman, 51 Va. App. at 471, 658 S.E.2d at 713-14).
Although the Dezfuli court acknowledged the closeness in concepts
between acts designed to threaten another person through
"promising" punishment or distress, and acts that merely "induce"
a reasonable person to feel apprehensive, the Court determined
that there was a material difference between such concepts,
expressly holding that "to obtain a conviction for brandishing a
firearm under Code § 18.2-282" the prosecution is "not required to
prove the defendant displayed his firearm 'in a threatening
manner.'" Id. at 10-11, 707 S.E.2d at 5-6 (emphasis added).
Notably, as defined under Virginia law, "brandish" means "to
exhibit or expose in an ostentatious, shameless, or aggressive
manner." Id. at 9, 707 S.E.2d at 5 (emphasis added) (quoting
Morris v. Commonwealth, 269 Va. 127, 135, 607 S.E.2d 110, 115
(2005)).

23

In light of such cases, the question here is whether displaying a firearm in a "shameless or ostentatious," manner without any design to "threaten" or promise reprisal on the victim, but with the result of inducing apprehension/fear, falls within the generic meaning of assault with a dangerous weapon. More precisely, the question is whether such conduct is sufficient to constitute the use or threatened use of violent force. Consistent with the fact pattern in Huffman, a prime example of conduct violative of § 18.2-282 that does not involve an express "threat" is an inebriated person in his front yard pointing a gun into the air causing a neighbor who is present in the yard to be apprehensive that the gun could be discharged, or otherwise cause harm of some kind.

In this Court's view, Va. Code § 18.2-282, a misdemeanor brandishing crime, appears broader than generic assault with a dangerous weapon, and more importantly to the instant case, it does not have the use or threatened use of violent force as an element. The first reason for such finding turns on the concept of a "threatened" use of violent force. As recently explained by another judge of this court:

> [A]lthough one way to define "to threaten" may be "to portend" (e.g., "the clouds threatened rain"), see "Threaten," American Heritage College Dictionary (3d ed. 2000), it is clear from the context of § 924(c)(3)(A) that this is not the sense in which Congress used the word in the force clause. Instead, a "threatened" use of force involves a situation where a defendant's

24

"conduct and words were calculated to create the impression" that the defendant may imminently use force. United States v. Jones, 932 F.2d 624, 625 (7th Cir. 1997) (cited in United States v. McNeal, 818 F.3d 141, 153 (4th Cir. 2016); see also "Threat," Black's Law Dictionary (8th ed. 2004) (defining a "threat" as a "communicated intent to inflict harm or loss on another").

Royer v. United States, 324 F. Supp. 3d 719, 737 (E.D. Va. 2018) (emphasis added). Therefore, the text of § 18.2-282, as well as its application in Dezfuli and Huffman, demonstrates that such statute can be violated without the defendant "calculating" his words and conduct to promise reprisal and without otherwise conveying a "threat" that he will imminently use force. See LaFave, 2 Substantive Criminal Law § 16.3(b) ("[I]n those jurisdictions which have extended the tort concept of assault to criminal assault," one cannot "commit a criminal assault by negligently or even recklessly or illegally acting in such a way (as with a gun or a car) as to cause another person to become apprehensive of being struck" because there "must be an actual intention to cause apprehension, unless there exists the morally worse intention to cause bodily harm). Because a defendant need not calculate a "threat" or promise reprisal of any kind to violate § 18.2-282, but may instead merely hold a firearm "in a manner that reasonably induced fear in the mind of some nearby person," Dezfuli, 58 Va. App. at 10, 707 S.E.2d at 5 (emphasis added), there is no element requiring a "threatened" use of violent force.

Second, the Court notes that in <u>United States v. Hodge</u>, 902 F.3d 420, 427 (4th Cir. 2018), the Fourth Circuit recently discussed its agreement with the Government's concession in that case that a <u>reckless endangerment</u> conviction under Maryland law does not satisfy the ACCA "force clause," because the ACCA force clause requires a higher degree of <u>mens rea</u> than recklessness. See <u>United States v. McNeal</u>, 818 F.3d 141, 154-55 (4th Cir. 2016) (noting that the Fourth Circuit previously ruled "that recklessness was not enough" to constitute a "'<u>use</u>' of force" under the ACCA (citing <u>Garcia v. Gonzales</u>, 455 F.3d 465, 468-69 (4th Cir. 2006))). Extending such analysis to the analogous § 924(c) context, <u>Dezfuli</u> and <u>Huffman</u> plainly suggest that a defendant can violate Va. Code § 18.2-282 by <u>recklessly</u> waiving a gun around in a manner that scares another. Accordingly, such statute does not <u>require</u> that a defendant <u>use</u> force, or threaten to <u>use</u> force, but rather, the victim must merely reasonably interpret the situation as involving danger.[11]

---

[11] The Court separately notes that, distinct from the fear that is typically associated with generic assault with a dangerous weapon (fear of suffering an injury from the weapon), the Virginia brandishing statute contains one clause that broadly requires only reasonable "fear in the mind of another," and a second clause requiring fear "of being shot or injured." Va. Code § 18.2-282. Because fear of something less than fear of "being shot or injured" appears to facially satisfy the first clause of § 18.2-282, the Court further questions whether § 18.2-282 requires a threat to use <u>violent</u> force. See <u>Morris</u>, 269 Va. at 130, 135, 607 S.E.2d at 112, 115 (affirming the defendant's § 18.2-282 conviction in a case where the victim was apparently confused about "what the situation was or what the situation could be" after the defendant displayed his gun, finding that the facts were sufficient to establish that the victim was reasonably "worried about" the safety of another person).

Notwithstanding the above, the Government argues that the elements of Va. Code § 18.2-282 "correspond in substantial part" to the elements of generic assault with a dangerous weapon, and thus, Count 29 remains a "crime of violence." Le, 316 F. Supp. 2d 355, 363 (quoting Taylor, 495 U.S. at 599). While this Court agrees that the brandishing "label" on the state law crime is irrelevant, and further agrees that the elements of the state law crime need not perfectly align with the generic elements, the Supreme Court has clarified (in the analogous ACCA context) that, when comparing the elements of a generically listed federal crime and a specific state statute, the key consideration is whether the state statute "sweeps more broadly than the generic crime." Descamps, 570 U.S. at 260-61. If the state statute is broader, and is applied to capture non-violent conduct, the conviction in question cannot serve as the predicate § 924(c) "crime of violence" regardless of whether the defendant's actual conduct violates the generic form of the offense. See Umana, 229 F. Supp. 3d at 392 ("If the generic crime is a 'crime of violence,' as it is defined under § 924(c), the statute of conviction also will qualify as a 'crime of violence,' if the statute's elements are substantially the same or narrower than those in the generic crime.") (citing Descamps, 570 U.S. at 257).

Here, the Court finds that Va. Code § 18.2-282 sweeps more broadly than generic assault with a dangerous weapon because the

27

most innocent conduct that has actually been prosecuted under Va. Code § 18.2-282 does not involve the use of violent force or the threat to use violent force, as the firearm does not need to be displayed with either the intent to harm or the intent to scare another person, but rather, can be waived in the air in a manner that is reasonably perceived as being dangerous. Cf. United States v. Ibarra, No. 17cr411 AJB, 2018 WL 620185, at *2 (S.D. Cal. Jan. 29, 2018) (concluding, in the context of a pre-trial challenge to the validity of a § 1959(a)(3) VICAR assault with a dangerous weapon charge cross-referenced to California state law (a slightly different issue than that addressed here), that the "Indictment is wanting in confirming probable cause to believe that the defendants violated the generic definition . . . which requires a level of mens rea not shared in the pleaded state statute") (emphasis added). Accordingly, post-Dimaya, Defendants' convictions on Count 29, VICAR assault with a dangerous weapon in aid of racketeering, as cross-referenced to Va. Code § 18.2-282, cannot serve as the necessary predicate "crime of violence" to support the Defendants' convictions on Count 30.[12] All three Defendants' convictions on Count 30 are therefore vacated.

---

[12] While this Court has not surveyed any relevant changes in Virginia law since 1984, it finds it notable that the DOJ VICAR Manual discusses the fact that, in 1984, when the VICAR statute was enacted, at least 43 states had "offenses for assault with a 'dangerous weapon' or 'deadly weapon' that had substantially the same meaning as that offense under 18 U.S.C. § 113," with Maryland, North Carolina, Virginia and West Virginia among the seven states identified that lack a substantially similar statutory offense. DOJ VICAR

28

C.

For the reasons set forth above, Defendants' post-trial
motions seeking leave to file late motions invoking the Supreme
Court's recent decisions in Carpenter and Dimaya are **GRANTED**. ECF
Nos. 444, 447. The Court also **GRANTS** Defendant Simmons' unopposed
motion to adopt a reply brief filed by his co-defendant. ECF No.
494.

For the reasons stated on the record during the November 1,
2018 hearing, and for those articulated above, Defendants' joint
motions for a new trial are **DENIED**, and Defendants' joint motions
seeking to set aside their verdicts are **GRANTED** as to Count 30,
and are **DENIED** in all other respects. ECF Nos. 445, 448.

The Clerk is **DIRECTED** to forward a copy of this Memorandum
Opinion and Order to counsel for Defendants and to the United
States Attorney in Norfolk, Virginia.

**IT IS SO ORDERED.**

---

Manual at 69-70. Consistent with another portion of such manual, and as
briefly referenced by the Government at the November 1, 2018 hearing, it
may have been possible for the Government to charge a VICAR "crime of
violence" through cross-reference to Va. Code § 18.2-282 if the jury was
instructed in a manner that required the additional finding that the
defendant intentionally used, or threatened to use, violent force, because
the federal VICAR charge would then satisfy the generic elements of assault
with a dangerous weapon, sufficiently allege a violation of state law, and
include as an element the use of violent force. Cf. Taylor, 495 U.S. at
602 (finding that an offense constitutes "generic" burglary in the ACCA
context "if either its statutory definition substantially corresponds to
'generic' burglary, or the charging paper and jury instructions actually
required the jury to find all the elements of generic burglary in order to
convict the defendant") (emphasis added). This course, however, was not
followed by the Government in this case.

29

/s/ Mark S. Davis
_____
                              Mark S. Davis
                    UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November  16 , 2018